TRENTON COTTON OIL CO. *v.* MCCANLESS, COMMISSIONER OF FINANCE & TAXATION.

(*Nashville,* December Term, 1949.)

Opinion filed March 17, 1950.

Rehearing denied April 29, 1950.

BASS, BERRY & SIMS, of Nashville, and ROBERT P. ADAMS of Trenton, for appellant.

Roy H. Beeler, Attorney General, William F. Barry, Solicitor General, and Harry Phillips, Assistant Attorney General, for appellee.

Mr. Chief Justice Neil delivered the opinion of the Court.

The complainant filed two suits in the chancery court at Nashville to recover franchise taxes paid under protests. The first was for the years 1939 and 1940 for $657.64 and the second for $426.51, making a total of $1,084.15. The two causes were consolidated and revived against the present Commissioner, Hon. James Clarence Evans.

The original bill (both cases) charged in substance that the properties of the complainant were written up on the books in the amount of $75,816.47, which was an inflated value of the properties and which write-up was

reflected on the books of appellant, the books showing on their face that that write-up had no value whatever; that the actual cash value of the real and tangible property of the complainant, as shown by its books and records in their entirety, was less than the figures taken from the franchise tax return made by appellant and a portion of which figures the appellee (Commissioner) used for its computation and added thereto a capital stock surplus and undivided profits account that the books themselves showed was without value and an arbitrary write-up, and did not deduct the loss sustained, as shown by appellant's books and records, "because it was overlooked". The bills go on to charge that the Commissioner did not follow the requirements of the Statute, Chapter 100, Public Acts of 1937 by examining the books and records of the appellant, but arbitrarily made an assessment "over and above the amount shown on appellant's sworn report to be due as franchise tax".

The Commissioner filed his answer in each case, and following an admission of certain immaterial charges, denied that he "wrongfully or illegally computed and collected any franchise tax in an excessive amount, or that any refund is due the complainant". The answer makes this further response to the charges of illegal assessment as follows:

"The defendant admits that, as alleged in Section IX, the book value of complainant's property is in excess of its actual value. Defendant avers that this is precisely the reason why the tax has been levied in the manner alleged, since it is defendant's statutory duty to assess franchise taxes on the book value of the taxpayer's capital stock, surplus and undivided profits, or on the

actual value of its real and personal tangible property, whichever is the greater amount.''

. . . . . . .

''As to the further allegation of Section IX that complainant intends to prove that 'the actual cash value of the real and tangible property of complainant is not in truth and fact as shown on its books and records . . .' defendant avers that in no case will a taxpayer, who has previously offered his books and records as a basis for taxation, be later heard to say that his books and records are false, and defendant charges that complainant is bound by the statements of its own books and records.''

Upon the original hearing of the case, the Chancellor, over the objection of complainant, referred the case to the Clerk and Master to determine: (1) The base on which the defendant calculated the taxes in question. (2) Whether or not complainant's capital stock was impaired by an operating deficit on its books. (3) Whether or not the book value of complainant's real and tangible property exceeded the value of its capital stock, surplus and undivided profits.

The Clerk and Master made an examination of the books and records of the complainant, heard the testimony of numerous witnesses and made a complete report to the Chancellor in which each of the foregoing issues was resolved in favor of the defendant and against the complainant.

In response to Item (1) of the reference the Master found ''from the proof'', that the capital stock of the complainant when first organized in 1923 was $75,000 and that in 1927 the stockholders ratified a resolution increasing the capital stock from $75,000 to $150,000. A 100% stock dividend was declared and certificates of

stock were issued to stockholders in this amount. While the corporation did not "receive any value for this additional stock so issued" or that "there was any surplus on hand to transfer to the capital account to justify the issuance of this additional stock", the company "began to show a profit from operation about 1927 and since that time dividends have been paid on a basis of $150,000.00 capitalization and in addition a surplus from operating profit has been accumulated from year to year". It would unduly prolong this opinion for us to recite the Master's detailed analysis of the evidence in support of his conclusions.

As to Item (2) of the reference he reported that "the capital account of $150,000.00 showed no impairment by actual book entry" etc. He called attention to the fact "that dividends were paid on $150,000.00 of issued capital stock from the year 1926 on" and "it is presumed that officers and directors were thus acting legally rather than illegally." In further support of the Master, although he does not refer to it in detail, the testimony of the corporation's Secretary-Treasurer, shows that the profits, dividend and earned surplus from August 31, 1925, until August 31, 1940, after deducting a "hedging loss" of $59,760.00 were as follows: total profits $233,776.17; total losses $72,668.34; or net profits of $161,107.83.

The contention of the appellant is that the stock dividend of $75,000 was fictitious and had no value. In other words it was what is known in common parlance as "watered stock". The auditor of the appellant corporation set up a new entry on the books called "book value surplus", $75,816.47 and it is therefore contended that it operated to wipe out the entire earned surplus. While

contention is made by the appellant that the stock dividend, or the "watered stock", had no value, the record discloses without controversy that no steps were taken to reduce the capitalization of the corporation as prescribed by Code Section 3736.

The Master further reported in response to Item (3) of the reference, that "the real and tangible personal property of the complainant did not exceed in value the capital account of $150,000.00 plus surplus as shown on the books of the corporation".

Exceptions were taken to this report, which were overruled by the Chancellor, and the said report was in all things confirmed. The bills were dismissed and an appeal prayed and granted to this Court.

The first assignment of error is that the Chancellor was in error in entering the order of reference, which we have copied in this opinion. This assignment is overruled on the authority of Gibson's Suits in Chancery, Section 620. While conceding the correctness of appellant's insistence that a confirmation of the Master's report is not binding upon this Court "where a reference is improperly ordered" we hold that in the instant case the Chancellor did not abuse his discretion in ordering a reference. *Clark* v. *Carlton*, 72 Tenn. 452. Considering this voluminous record, and the issues of fact that were in dispute, we think it was a proper case for an order of reference.

Assignments 2, 3, and 4 are grounded upon the contention that the Chancellor's decree is erroneously based upon the "Master's reference report".

The base upon which the State is required to assess the tax in question is fully and correctly set forth in the Chancellor's order of reference, and it need not be here

repeated. His final confirmation of the Master's report, based upon numerous exhibits, books and the testimony of witnesses, overruling exception thereto, is binding upon this Court on appeal. Gibson's Suits in Chancery (4th Ed.) Sections 620, 1302. *Dale* v. *Hartman,* 157 Tenn. 60, 6 S. W. (2d) 319; *Brown* v. *Dailey*, 85 Tenn. 218, 1 S. W. 884.

We are constrained to overrule the contention of the appellant that the Commissioner's assessment of the franchise tax was unlawful because it was made contrary to what appeared upon its books and records (Code Section 1248.143) which showed that certain losses resulted in ''an impairment of capital''. There is not only a concurrent finding that there was no impairment of capital, but the records showed the payment of dividends from the year 1925 through 1940, the total amount of which was almost equal to double the amount of the corporation's original capital stock. As pointed out by counsel for the Commissioner; ''These dividends could not lawfully have been paid *if the corporation had been operating without surplus and with its capital stock impaired by an operating deficit.''* (Italics ours.) Code Sections 3737 and 3759.

Counsel for the appellant has relied on *Gilmore Holding Corporation* v. *Stokes*, 177 Tenn. 561, 151 S. W. (2d) 1079 and former opinions of the Attorney General. We think the learned counsel has overlooked the distinction between that case and the case at bar. Moreover the controversy as to whether the ''book value'' of appellant's capital stock and surplus exceeded the actual value of its real and tangible personal property is foreclosed by the concurrent finding of the Master and the Chancellor.

Appellant also relies upon *Trenton Cotton Oil Co.* v. *Commissioner of Internal Revenue,* 6 Cir., 147 F. (2d) 33, Id., 6 Cir., 148 F. (2d) 208, in support of its several assignments of error. But we think the case has no application for the reason that the tax there involved was upon *net income* and not measured by *capital stock and surplus,* as in the instant case. Compare Section 118, Internal Revenue Code, 26 U. S. C. A. Section 118, with Williams' Code 1248.143.

If the contention of the appellant is correct the result would be a serious impairment of the power of the State to collect franchise taxes as authorized by the Statute, for the reason that there would be endless disputes as to what the capital stock of every corporation in Tennessee is actually worth. We are furthermore convinced that if appellant is correct then every corporation in the State could evade the tax on its surplus by designating upon its books every item of income or profits as ''Book Value'' only.

The assignments of error are overruled and the Chancellor's decree is affirmed.

All concur.