[Civ. No. 18821. Second Dist., Div. Two. May 27, 1952.]

AMERICAN MOTORISTS INSURANCE COMPANY (a Corporation), Respondent, v. CLAUDE F. MOSES et al., Defendants; ROBERT W. SIMPSON et al., Appellants.

Samuel P. Young, William Jerome Pollack and Harry F. Shafer for Appellants.

Crider, Runkle & Tilson for Respondent.

FOX, J.—This is an action for a declaration of rights and obligations under a policy of automobile liability insurance. The policy was issued to the owner, defendant Moses, with whom defendant Campbell was associated as a partner or

joint venturer, on a Dodge stake body truck, effective June 28, 1950. On August 24, 1950, the insured truck, which was then being operated by defendant Campbell, was involved in an accident in which a number of persons who were riding as passengers for compensation sustained physical injuries. As a result of such injuries claims were presented to plaintiff. On the theory that such transportation of passengers was a risk not covered by the policy, plaintiff denied liability and thereupon instituted this action seeking a declaration that it had no liability under said policy to any of the injured parties. From a judgment in favor of the plaintiff certain of the defendants who were passengers have appealed. However, defendant Moses, who was the named insured, has not appealed.

In the original policy the insured was listed as a "truckman" employed by Miller Brothers, who were manufacturers of toilet seats. As a consequence there was attached "Local Truckman Endorsement" which parenthetically was explained to mean "Handling exclusively for one concern." This endorsement provided the insurance on the truck did not apply while it was used in hauling for a charge property for any person or organization other than Miller Brothers. To complete the insurance setup, there was attached to the policy when originally written endorsement number one in compliance with the requirement of the Public Utilities Commission of the state in order to enable the insured to obtain a license to operate "as a motor carrier of property." Hauling merchandise for Miller Brothers only did not prove satisfactory to Moses and Campbell, so on July 20 a "Change of Declaration" was attached to the policy, stating insured was self-employed as a truckman, that is, they were no longer hauling exclusively for Miller Brothers. This expansion of their hauling enterprise called for a premium increase of $96.60. Defendant Moses explained the purpose of this change was to enable them to do "general hauling" which would enable them "to do moving" and haul "furniture or merchandise," but not passengers, for the public generally.

Under the heading of exclusions, it is provided the policy does not apply while the vehicle is used as "a public or livery conveyance," unless such use is specifically declared and described in the policy and a premium charged therefor. No such use was ever declared, nor was any premium ever paid to cover it. During the latter part of July, Moses and

Campbell, in addition to the transportation of merchandise of various kinds, commenced the transportation of agricultural laborers to rural areas for harvesting work. These trips started from an assembly point at Eighth and San Pedro Streets, Los Angeles, where the workers had been told to gather by the Federal Farm Labor Bureau. Moses and Campbell conducted this phase of their operation by arrangements made in advance by employers in need of day laborers. They then arranged with the Federal Farm Labor Bureau to send laborers to the designated street, where defendants Moses and Campbell would pick them up in the insured vehicle to transport them to the work area. Campbell would shout to the assembled group something about the place where the work was located or the type of harvesting, and all those interested would clamber aboard the truck until it was filled to capacity.

The first workers transported were carried for a charge of $1.00 per day each, and the job lasted for about a week. For a period of approximately three weeks thereafter the insured vehicle carried merchandise only. At this time onion harvesting work became available at the ranch of one Feldman in San Fernando Valley, and Campbell reverted to the arrangement above described for carrying workers to the Feldman ranch at a charge of 75 cents a day for each worker transported. In addition Campbell received the further sum of 10 cents from said Feldman for transporting each of the said persons to the ranch. The rancher would pay defendants Moses and Campbell for such farm labor furnished him, and said defendants would pay each laborer for his work, after deducting the charge of 75 cents for transportation to and from Los Angeles. Generally, on return trips from San Fernando Valley defendants Moses and Campbell would haul approximately 50 sacks of onions, picked up at Feldman's ranch, back to Los Angeles in addition to the laborers.

On August 24, 1950, with about 26 passengers aboard and Campbell driving, the Dodge truck collided with another motor vehicle while en route to the Feldman ranch under the hiring and transportation arrangement above described. As a result of the collision, certain of the passengers received physical injuries. Included among these was defendant Simpson, who had made four prior trips with defendant Campbell to Feldman's onion ranch and who had paid Campbell 75 cents for the first round trip only. Thereafter, and on the date of the accident, he had been carried

without charge pursuant to an agreement that he would endeavor to secure from ranchers in the vicinity commitments for the future transportation of agricultural laborers by Campbell from Los Angeles to their ranches.

The trial court found that the "transportation of passengers for hire constituted a part of the business" of Moses and Campbell in connection with which they used the Dodge truck. In construing the policy the court also found that the term "truckman" meant, and that defendant Moses understood it to mean, the handling of merchandise or personal property and not the hauling of passengers, and that plaintiff at no time was notified by defendant Moses of any intention to haul passengers for hire on the insured truck.

Moses and Campbell started out hauling merchandise exclusively for a particular concern. They took out an insurance policy that provided coverage for that limited type of trucking and paid the premium provided for such a risk. The endorsement initially placed on the policy to enable them to comply with the requirements of the Public Utilities Commission and thus get a license to operate "as a motor carrier of property" further emphasizes the fact that they only intended to haul property and that the policy only covered such a risk. When the deal with Miller Brothers did not work out they undertook to expand their clientele in the trucking business by hauling furniture and merchandise for other people. Such enlarged business naturally involved greater hazards and consequently a higher insurance rate. Moses advised plaintiff of this contemplated change in the scope of their trucking operations. He filed a change of declaration wherein he stated he was self-employed as a truckman, and paid the increased rate. There was no subsequent change in either declaration or rate.

The finding of the trial court that the term "truckman" meant "the hauling of merchandise or personal property and not the hauling of passengers" and that Moses so understood it becomes important. Such a definition of "truckman" is one of common use. In Webster's New International Dictionary, second edition (1947) the term is defined as a person "whose business it is to convey goods on trucks."

The words in an insurance policy are to be taken in their plain, ordinary and popular sense. (14 Cal.Jur. § 29, p. 451; *Hyer* v. *Inter-Ins. Exchange*, 77 Cal.App. 343 [246 P. 1055]; *Burr* v. *Western States Life Ins. Co.*, 211 Cal. 568 [296 P. 273].) Since Moses, who was buying the pro-

tection, knew what the term "truckman" meant, we have both parties to this insurance contract with a common understanding of what the coverage was. ■ In construing a contract of insurance "the manifest intention of the parties is normally decisive." (*Ohran* v. *National Auto. Ins. Co.*, 82 Cal.App.2d 636, 645 [187 P.2d 66].) The primary object is to ascertain and carry out that intention. (*New York Life Ins. Co. v. Hollender*, 38 Cal.2d 73, 81 [237 P.2d 510].) ■ Consequently the policy, according to its provisions and the understanding of both parties to the contract, only covered risks incident to the hauling of merchandise.

Appellants, however, say the foregoing finding is not supported by the evidence. The first part of this finding is simply a declaration of that which is a matter of common acceptance; the latter part is amply supported by the testimony of the insured, defendant Moses.

Appellants also contend that what Moses understood the term "truckman" to mean was immaterial. Under many circumstances this might be true, but here it is relevant because it shows there was neither uncertainty, misunderstanding nor mistake as to the coverage provided by the policy.

In this connection it must not be overlooked that the court found, on substantial evidence, that about one month prior to the accident defendants Moses and Campbell commenced the transportation of passengers for hire in the insured truck to ranches in the vicinity of Los Angeles and that "such transportation of passengers for hire constituted a part of the business of said defendants" and that they continued said business to and including the time of the accident. The transportation of passengers for hire is a highly specialized phase of the transportation industry, and requires excellent equipment and skilled personnel. It is in fact a business within an industry. It is a matter of common knowledge that the hazard incident to the transportation of passengers is far greater than that involved in hauling onions or other inanimate cargo and consequently commands a higher premium rate. To say that this substantially increased risk was covered by this policy would be to write a new contract for the parties, and include a coverage which they did not contemplate, and for which nothing was paid.

It is also to be noted that this transportation of passengers for hire was *a part of the business of* Moses and Campbell. It was not just an isolated departure from their usual truck-

ing operations. It was not just a pleasure trip, nor a matter of convenience to them. They were engaged in this transportation enterprise as a business venture with the hope of making a profit out of the use of the truck. This is emphasized by the fact that they were carrying defendant Simpson without charge but with the understanding that he would solicit other ranchers to make use of their transportation of farm laborers.

Counsel for appellants cite a number of authorities involving liability insurance policies on automobiles classified in the insurance policy as "business or pleasure," containing exclusion clauses prohibiting use as "a public or livery conveyance" in which the courts allowed recovery on the policy despite the fact that passengers were carried for a monetary consideration. They particularly rely upon *McDaniel* v. *Glens Falls Indem. Co.*, 333 Ill.App. 596 [78 N.E.2d 111] ; *Pimper* v. *National American Fire Ins. Co.*, 139 Neb. 109 [296 N.W. 465] ; *Allor* v. *Dubay*, 317 Mich. 281 [26 N.W.2d 772]. In each of these cases it is noteworthy that the insured was engaged in an activity within the coverage of the policy, and had merely accepted passengers to defray expenses of a journey he would have undertaken anyway, or was engaged in a "share the ride" plan to and from work. The taking of passengers was incidental and subordinate to an accepted use of the automobile and was a matter of convenience to the insured. In the instant case, the court in effect found that the carrying of passengers became an additional part of defendant Moses' business at the time of the accident and such enlargement of his trucking activities was outside the use contemplated by the parties. Other cases have held that an occasional or temporary use of a vehicle to carry passengers will not avoid liability on the policy (*Stanley* v. *American Motorists Ins. Co.*, —— Md. —— [73 A.2d 1]), nor will occasional or intermittent employment of the vehicle in a line of endeavor other than that stated in the declaration relieve the insured from liability. (*Farmers Auto. Inter-Ins. Exchange* v. *Calkins*, 39 Cal.App.2d 390 [103 P.2d 230].) However, we find here a continued use of the vehicle in a manner not covered by what the parties understood to be meant by the term "truckman" nor one that is covered by the popular meaning ascribed to that word. Under these circumstances, where the conveyance of passengers had assumed an important part of Moses' business activity prior to the accident, and the carriage of mer-

chandise had been relegated to a mere incidental part of this transportation of paying passengers, it must be held, in line with the determination of the trial court, that this expanded use was outside the protection afforded by the policy.

Counsel have argued in their briefs at some length whether the use to which Moses had put the insured vehicle constituted a "public or livery conveyance" and hence within the exclusionary clause prohibiting such use. Our conclusions render it unnecessary for us to consider this question.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied June 16, 1952, and appellants' petition for a hearing by the Supreme Court was denied July 24, 1952. Carter, J., was of the opinion that the petition should be granted.