COMMERCIAL CREDIT CORPORATION, Complainant-Appellee, v. BILL MONROE, H. O. GARY, AND FULTON FIRE INSURANCE COMPANY, Defendants-Appellant.—277 S. W. (2d) 423.

Middle Section.  August 27, 1954.

Petition for Certiorari denied by Supreme Court, March 11, 1955.

Jacobs H. Doyle, of Nashville, for Commercial Credit Corp.

Thomas O. H. Smith, of Nashville, for Bill Monroe.

E. L. Edwards, Jr., and Jack Norman, Jr., both of Nashville, for H. O. Gary.

Thomas G. Watkins (of Watkins, Moore & Crownover), of Nashville, for Fulton Fire Ins. Co.

HICKERSON, J.    Bill Monroe purchased an automobile and executed a conditional sales contract to secure the payment of a part of the purchase price. Commercial Credit Corporation bought this contract as an innocent purchaser. Fulton Fire Insurance Company insured the automobile against theft. The automobile was stolen, and Bill Monroe defaulted in his payments.

H. O. Gary brought the stolen automobile from Indiana, did certain mechanical work on it and kept it in storage.

Commercial Credit Corporation filed the original bill against Bill Monroe and H. O. Gary to replevy the automobile and sell it under the conditional sales contract. Bill Monroe filed a cross bill to recover under his theft insurance contract with the insurance company. H. O. Gary filed a cross bill in which he sought to fix a lien upon the automobile for the satisfaction of his claim in connection with it; and, in the alternative, for a decree against the Fulton Fire Insurance Company for the amount of Gary's claim.

Issues were made by answers to the original bill and the cross bills.

The automobile was sold under the orders of the Chancery Court for $625.

The Chancellor found the issues in favor of Commercial Credit Corporation against Bill Monroe; in favor of Bill Monroe against The Fulton Fire Insurance Company on the theft policy; in favor of H. O. Gary against The Fulton Fire Insurance Company, and denied the lien which Gary sought; and decreed accordingly. The specific rights and equities of the parties were adjusted in the decree.

The Fulton Fire Insurance Company appealed.

Three determinative questions are presented by the assignments:

1. Did the Chancellor err, "in finding and adjudging that the policy involved was in force despite its terms and provisions excluding coverage when the insured car was used as 'a public or livery conveyance' "?

2. Did the Chancellor err in refusing to limit the recovery against the insurance company to the "repairs or

replacement cost necessary to restore the automobile to its condition when stolen''?

3. Did the Chancellor err in entering a decree in favor of H. O. Gary against the insurance company for returning the stolen automobile to Nashville and making certain repairs on it?

(1) The policy of insurance on the automobile provides ''actual cash value'' coverage against theft. The purpose for which the automobile would be used was stated in the policy to be for ''business and pleasure.''

The automobile was stolen. The insurance contract provides: ''This policy does not apply: (a) under any of the coverages, while the automobile is used as a public or livery conveyance, unless such use is specifically declared and described in this policy and premium charged therefor.'' No declaration was made nor premium charged which covered the use of the automobile, ''as a public or livery conveyance.'' Bill Monroe was in the show business. He made radio and television appearances, with other players, in several states. The base of his operations was Nashville, Tennessee. He arranged his schedule so he could be in Nashville each Saturday night. The automobile in question was bought to be used to transport Monroe and four other players to the different places where they gave performances. Bill Monroe was the owner of the outfit. The others worked for him. He paid them a weekly salary and transported them to the various places in the automobile in question at Monroe's expense. Under these facts, which are not in dispute, was the automobile, ''used as a public or livery conveyance,'' so as to fall within the foregoing exclusion clause of the policy; or was the automobile used for, ''business and pleasure,'' so as to be covered by the policy?

We think the Chancellor correctly decided this issue. "Public or livery conveyance," carries the idea of a conveyance which is used by the public in general. A correct construction of the use of an automobile in which only employees of Bill Monroe were transported would be that it was being used for, "business and pleasure," within the meaning of this policy, and was not being used as a, "Public or livery conveyance"; and such use and operation of the automobile would be covered by the policy.

Appellant cites two decisions to support its theory that the use of the Monroe car was within the exclusion clause of the policy: Smith v. Service Fire Insurance Company, 184 Tenn. 139, 197 S. W. (2d) 233, and Jackson v. Old Colony Insurance Company, 31 Tenn. App. 424, 216 S. W. (2d) 354. Under each of these decisions the automobile in question was being used as a taxicab; that is, to convey people generally for hire. Of course, such use was within the exclusion clause; and the Court so held.

The facts here are entirely different. The employees of Bill Monroe were conveyed in this automobile and not people generally. Under such facts the exclusion clause did not apply. Allor v. Dubay, 317 Mich. 281, 26 N. W. (2d) 772; McDaniel v. Glens Falls Indemnity Company, 333 Ill. App. 596, 78 N. E. (2d) 111.

(2) The policy contains the following provisions under the title, "Limit of Liability; Settlement Options; No Abandonment":

"The limit of the company's liability for loss shall not exceed the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss nor what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with de-

duction for depreciation, nor the applicable limit of liability stated in the declarations.

"The company may pay for the loss in money or may repair or replace the automobile or such part thereof, as aforesaid, or may return any. stolen property with payment for any resultant damage thereto at any time before the loss is paid or the property is so replaced, or may take all or such part of the automobile at the agreed or appraised value but there shall be no abandonment to the company."

A similar situation, involving the identical provisions of the policy here in question, was before the Court in Weems v. Service Fire Insurance Company of New York, 181 Tenn. 1, 178 S. W. (2d) 377, 378, wherein the Court stated this rule:

"The effect of these holdings is that on a policy of insurance such as that before us and with limitation of liability as stated, the duty of the insurer after loss, is to put the insured in the same situation with regard to his automobile as the insured was before the loss occurred. If the insurer cannot do this by pursuing the replacement and repair provision of the policy, it must do so by paying the cost of the automobile (Stoops v. [First American] Fire Insurance Co., supra [160 Tenn. 239, 22 S. W. 2d 1038]) less the fair value of the remaining or recovered part."

■ The value of the automobile in question when stolen was $2,195. The value of the salvage when recovered was less than $600. The wrecked car sold, after some repairs, for $625. The Chancellor decreed a recovery under the theft policy for $2,195, less $625 with interest. In this decree there is no error. We have carefully considered the injuries to this automobile; and agree with the mechanic, defendant H. O. Gary, when he testified:

"Q. What I am asking you about now is when you made out this bill, if I understood you, it would cost $624.53 to put the car back in good shape? A. Well, it would be a wrecked car. Did you ever drive a wrecked car?

"Q. You would make a good lawyer. I happen to be the one this time? A. I would love to state that a wrecked car is never put back in first class shape, I. got a '41 wreck now, I done the work myself and it ain't back in first class shape.

"Q. To spend this amount of money on it that you refer to, in other words, these two bills, one of $624.53 and the other $391.70, amount to $1,015.83, would that be a much better car? A. You, mean back like it was before it was stolen? No, sir."

This automobile could not be restored to its condition before the theft, so the rule in the Weems case should be applied.

■ (3) There is a concurrent finding of the Master and Chancellor that The Fulton Fire Insurance Company did authorize H. O. Gary to do the work in connection with the automobile in question upon which his claim is based. There is material evidence to support such finding. This Court is bound by that determination of fact. Trenton Cotton Oil Co. v. McCanless, 190 Tenn. 219, 229 S. W. (2d) 143.

There is no error in the decree which the Chancellor entered in favor of H. O. Gary.

Let the assignments be overruled, and the decree of the Chancery Court affirmed with all costs. Remand to enforce it.

Felts and Howell, JJ., concur.