[Civ. No. 26511. Second Dist., Div. Four. Apr. 15, 1963.]

MARCIA ROBINSON, Plaintiff and Appellant, v. NORTH AMERICAN LIFE & CASUALTY COMPANY, Defendant and Respondent.

Burton Marks for Plaintiff and Appellant.

Kinkle & Rodiger and David W. Graf for Defendant and Respondent.

KINGSLEY, J.—This action, by the widow of William Robinson, involves the determination of whether or not decedent had coverage under a group life insurance policy issued by defendant. Plaintiff prosecutes this appeal following a trial by jury in which she was denied recovery. A motion for judgment notwithstanding the verdict or in the alternative for a new trial was denied.

For some time prior to his death on April 22, 1959, decedent operated a Texaco service station in Los Angeles as an individual proprietor leasing the premises from the Texaco Company (Texaco). Texaco offered to its employees and individual proprietors a group life insurance plan with coverage effective March 16, 1959. The policy provided that an individual proprietor within the Texaco organization would be included within the term "employee" as used in the policy if "such individual . . . is actively engaged in and devotes a substantial part of his time to the conduct of the business of the proprietorship. . . ." It was further provided that coverage was effective as to all Texaco employees who had made application prior to the effective date and who were "actively at work" on the effective date of the policy. For employees not actively at work on the effective date of the policy, coverage would become effective "on the date of return to active work."

Decedent was hospitalized for several periods of varying length between January 15, 1959, and the date of his death, April 22, 1959. On the effective date of the coverage of the Texaco group policy, March 16, 1959, decedent was in the hospital.

Decedent was engaged in numerous business enterprises in addition to the service station herein involved. The record contains testimony that, on most days prior to January 1959, decedent normally spent two or three hours (usually late in the evening) at the service station doing bookkeeping work, making up bank deposits, ordering supplies, checking inventories, etc. There is a conflict in the evidence as to whether or not decedent ever resumed such activities after March 16, 1959, the effective date of the policy.

Plaintiff contends on appeal that the trial court committed errror in the following particulars: (1) in rulings in admitting and rejecting certain items of evidence; (2) in submitting certain issues of law to the jury; (3) in giving and refusing certain jury instructions; and (4) in denying plaintiff's motion for judgment notwithstanding the verdict.

### Evidentiary Rulings

Evidence was admitted over plaintiff's objections in the form of defense counsel's reading portions of plaintiff's deposition concerning her application for benefits under certain disability policies. The court properly overruled plaintiff's objections. Unrestricted use as substantive evidence may be made of a deposition without any showing of unavailability of the deponent where the deposition is that of a party to the record or of a person for whose immediate benefit the action or proceeding is prosecuted or defended. (Code of Civ. Proc., § 2016, subd. (d) (2); *Hurtel* v. *Cohn, Inc.* (1936) 5 Cal.2d 145 [52 P.2d 922]; *Murry* v. *Manley* (1959) 170 Cal. App.2d 364, 366 [338 P.2d 976].)

Plaintiff also objected to defendant's introduction in evidence of applications made by plaintiff for disability benefits, two checks paid by an insurance company as disability benefits and a doctor's statement on the reverse of one of the applications. One of the applications (National Casualty Co.) was made by plaintiff on January 25, 1959. Viewed alone, its admission was possibly error since it appears remote to the issues of this case that decedent may have been disabled as of January 25. However, with further proof that the disability continued until decedent's death, the application was material.

The other application (Calif-Western States Life Insurance Co.) made by plaintiff on June 5, 1959, contained statements that decedent's last day of work was January 9, 1959, and that decedent had been continuously unable

to do his work since January 9, 1959. On the reverse side of this application was a statement by decedent's doctor that decedent had "been continuously disabled (unable to do regular work) from January 9, 1959 to April 22, 1959."

When first introduced, the applications, checks and doctor's statement were erroneously referred to by defense counsel as impeachment evidence. Since plaintiff was never a witness, such characterization of the evidence was improper. Plaintiff further objected that these same items were hearsay. It is clear that the applications could be received in evidence as admissions since they were made by plaintiff, a party to the action, and were inconsistent with her position at the trial. The checks and the doctor's statement were hearsay; however, the doctor's statement was transmitted by plaintiff to the insurance carrier there involved as part of her application and, thus, became part of her own admission. The admission of the checks does not appear prejudicial in that they added little to the effect of the applications.

As a final evidentiary point, plaintiff contends it was error to deny her effort to introduce the entire deposition into evidence. Plaintiff's counsel was given the opportunity at the trial to read all or any part of the deposition. In this way plaintiff had the chance to make a full presentation but it also afforded defendant the opportunity to object to items in the deposition which would be excludable. Use of a deposition is governed by the general rules of evidence. (Code Civ. Proc., § 2016, subds. (d), (e).) It was not error for the judge to deny the right to introduce the deposition as a whole into evidence.

### Issues of Law to Jury

The jury was called upon to rule on two principal issues in determining whether or not decedent was covered by the group life insurance policy. The first issue was decedent's eligibility to be an "insured" under the terms of the policy. Decedent's eligibility depended upon his being "actively engaged in" and devoting a "substantial part of his time to the conduct of the business." The second major issue was whether decedent ever met the individual coverage requirement of "return to active work" after March 16, 1959, the effective date of the policy.

Although the court ruled that the words "substantial" and "actively" were not ambiguous, it did include definitions or interpretations of the words in its instructions. The

word "substantial" is a relative term, its measure to be gauged by all the circumstances surrounding the matter in reference to which the expression has been used (*Atchison etc. Ry. Co.* v. *Kings County Water Dist.* (1956) 47 Cal.2d 140, 144 [302 P.2d 1]). ■ When the word "substantial" is considered as used in the policy of insurance in the instant case its meaning could denote more than half of an individual proprietor's time or merely a material or significant amount of his time. Thus, "substantial," as used in the policy, is susceptible to more than one interpretation and, therefore, ambiguous. Neither party offered evidence directed toward resolving the ambiguity. It was, thus, for the court to resolve the issue and to instruct the jury as to the meaning of the word "substantial," leaving to it to determine whether or not the witnesses for plaintiff had accurately reported the kind and extent of decedent's participation in the service station business prior to his original hospitalization and whether or not the participation so described complied with the definition given. The definition of "substantial," as given,[1] was adequate to direct the attention of the jury to the matters to be considered, and had it stood alone, would not have constituted error.

■ Plaintiff also contends that the word "actively" was ambiguous. With this we cannot agree. Actively—meaning the opposite of passively—has no double connotation but merely denotes some activity. Such word is in common usage and, as applied to work of a proprietor of a service station, clearly means some actual engagement in work. (*Boyer* v. *Travelers Ins. Co.* (1936) 7 Cal.2d 615, 619 [61 P.2d 925]. The instruction given by the court,[2] although unnecessary, was in accord with this definition.

There remained for the jury the issues of the credbility of plaintiff's witness. The term "actively," it will be noted, was important both in relation to the issue of eligibility and to the issue of whether or not the insurance ever had become effective as to decedent. But, while the meaning of the term was

---

[1]The instruction as to the word "substantial" was as follows: "Substantial is defined as not seeming or imaginary, not illusive, real, true, important, essential, material, having good substance, strong, stout, solid, firm. It means considerable in amount, time, or the like; firmly established, solidly based, also it means something worthwhile as distinguished from something without value or purely nominal."

[2]The instruction as to the word "actively" was as follows: "Actively at work means actually on the job and performing the customary work."

the same on both issues, the evidence was not. The jury might well believe the uncontradicted testimony that decedent had "actively" participated in the business of the station before January 9th and disbelieved the testimony as to his "activity" after March 16th. Again, were it not for the instruction hereinafter considered, no error appears, although the instruction as to the meaning of "actively" was superfluous.

### Motion for Judgment Notwithstanding the Verdict

Plaintiff contends that it was error for the trial court to deny her motion for judgment notwithstanding the verdict. The power to grant such a motion is the same as and no broader than the power to order a nonsuit or directed verdict, but does not authorize the trial court to weigh the evidence. (*Tracey* v. *L. A. Paving Co.* (1935) 4 Cal.App.2d 700 [41 P.2d 942].) The cardinal requirement for a directed verdict (and judgment notwithstanding the verdict) is that there is no substantial conflict in the evidence. (*Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768]; *Tremeroli* v. *Austin Trailer Equipment Co.* (1951) 102 Cal.App.2d 464 [227 P.2d 923].) This requirement is not met in the instant case. There were substantial conflicts in the evidence as to whether or not decedent had returned to active work after March 16, 1959. Therefore, the trial court's denial of the motion for judgment notwithstanding the verdict was correct.

### Jury Instructions

Plaintiff duly requested a proper instruction as to the construction of any words in an insurance policy which are doubtful in the light most favorable to the insured. This request was refused and, instead, the court instructed the jury as follows:

"The law requires that the terms of a contract must be strictly construed so as to give such meaning to the wording of the contract as to carry out the validity of the contract and to make it effective."

This instruction was inappropriate to the instant case. It is normally used in cases involving performance problems in ordinary contract cases. It would be a reversal of the rule in insurance cases where the insurance contract is to be construed in favor of the insured and against the insurer. (*Continental Casualty Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914].) Accordingly, the

giving of the above quoted instructions as well as the refusal of plaintiff's requested instructions as to liberal interpretation was error.

In the light of these instructions, we cannot say that the jury necessarily based its decision by resolving in favor of defendant the issues as to "substantial" participation or the conflict as to decedent's activity after March 16th. This being so, the error necessarily requires a reversal.

The judgment is reversed.

Burke, P. J., and Jefferson, J., concurred.