[Civ. No. 26897. Second Dist., Div. Four. Oct. 10, 1963.]

ALLSTATE INSURANCE COMPANY, Plaintiff and Respondent, v. THE NORMANDIE CLUB et al., Defendants and Appellants.

104

Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Defendants and Appellants.

Parker, Stanbury, McGee, Peckham & Garrett and Raymon G. Stanbury for Plaintiff and Respondent.

KINGSLEY, J.— Plaintiff insurance company issued its policy of automobile liability insurance to one Gordon and such policy was in force on April 2, 1960, when the accident which underlies this litigation occurred. By its terms, the policy excluded coverage of "any automobile while used as a public or livery conveyance." Gordon, an employee of defendant Normandie Club, regularly carried persons from the so-called "Hollywood" area in the City of Los Angeles to the premises of the club in Gardena, California, and returned

them to the points where he had picked them up. Normally, the persons so transported paid $1.00 for the roundtrip, such payment being made to Gordon and retained by him. Gordon carried only those persons who were about to become, or who had just been, patrons of the club. The club, consisting of a restaurant and a draw poker parlor, was open to anyone who desired to use its facilities.

On the day in question, several patrons of the club, desiring to be transported from the club to their homes, had entered, or were about to enter, Gordon's automobile when an accident occurred, causing personal injuries to them. They thereupon filed suits against Gordon and against the club— contending that the latter was liable as Gordon's employer. The insurance company, having been called upon to defend these actions, instituted the present action for declaratory relief, seeking an adjudication that it had no duty either to defend the actions, or to pay judgments if recovered. Named as defendants, in addition to Gordon and the club, were the several personal injury plaintiffs and appellant Globe Indemnity Company (hereinafter "Globe.")[1]

Gordon and two of the personal injury claimants defaulted and the action proceeded against the club, Globe and two of the claimants. At the request of the club, a jury was impanelled to try the issue of coverage. It returned a verdict in favor of plaintiff, the trial court made its findings adopting such a verdict and entered judgment in favor of the plaintiff. Only the club and Globe have appealed.

The sole issue litigated at the trial was whether or not Gordon's activities in carriage of the personal injury plaintiffs fell within the exclusionary clause above quoted. Evidence was offered on the subsidiary issues as to whether Gordon's transportation business was conducted as an agent of the club or on his own behalf and as to whether or not the payment of the $1.00 transportation fee was obligatory on those carried or was a mere gratuity. However, as the case is presented in this court, and as we view the major issue, resolution of these secondary matters is not necessary.

Appellants present the case to his court as one involving error in the giving and refusing of instructions to the jury and respondent has answered on the same basis. Since

---

[1]Globe was the club's insurance carrier. It was brought in, by order of court, as "a conditionally necessary party," because of Globe's contention that plaintiff's policy applied, covered the club as an additional insured and was, as to the club, primary insurance.

the present case is one in which an action for declaratory relief has been substituted for an action at law for breach of contract, a jury was a matter of right. (*State Farm Mutual Automobile Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428 [304 P.2d 13].) The trial judge adopted the jury verdict as one of his own findings, and it is obvious that his findings proceeded on the same legal theory as that which underlay his jury instructions. Hence, whether we look to the instructions and verdict or to the findings of fact and conclusions of law, the ultimate legal issue is the same.

 A review of the record discloses that there was no real dispute as to the type of transportation service performed by Gordon nor as to the fact that he held himself out, within the limits of his area of operations, of his seating capacity and time schedules, to serve any persons who desired travel to or from the Normandie Club, and that he accommodated no one not within that category. Thus the sole issue is whether or not this constituted a "public" transportation within the meaning of the policy clause. The trial court concluded that it did and, pursuant to that concept, gave the following instructions:

"The word 'public' does not necessarily mean everybody. It may refer to a group of persons, although small in number. Specifically, it may refer to the clientele of an establishment such as Normandie Club."[2]

"The evidence shows that the Normandie Club was open to the public. Therefore, one serving its clientele serves the public, even though the service might be rendered to some, only, of such patrons, such as those residing in a particular area."[3]

"The term 'public conveyance' means a vehicle used indiscriminately in conveying the public, and not limited to certain persons and particular occasions or governed by special terms. The words 'public conveyance' imply the holding out of the vehicle to the general public for carrying passengers for hire. The words 'livery conveyance' have substantially the same meaning."[4]

"However, it is not necessary that there be any offer or undertaking to transport all members of the public who may request the service. And the requirement that the selection of persons to transport be made 'indiscriminately' would be met in this case if persons were transported solely because

---

[2] Plaintiff's Requested Instruction No. 2.

[3] Plaintiff's Requested Instruction No. 3.

[4] Defendants' Requested Instruction No. 10.

they were patrons of the Normandie Club, if the patronage of that establishment was permitted to the public indiscriminately.''[5]

This is not the first case to construe an exclusionary clause couched in these terms. But it appears to be the first case in California.[6]　　Our review of the cases cited by counsel,[7] and our own research, leads us to conclude that the true rule is as follows:

(a) The payment of compensation is not a determinative factor; while, as counsel for the insurance company points out, this does affect the extent of liability, the insurer can, if it desires, protect itself against such a risk by language specifically directed to that point;

(b) the fact that carriage is between fixed termini, or at stated times, is not determinative—the same factors appear in carriage by a trolley or bus line;

(c) while some importance must be attached to the fact that carriage is regular and repetitive, rather than casual and occasional,[8] the chief factor lies in the policy of selection and exclusion of passengers;

(d) the fact that the carriage is limited to members of a particular group is important if that group is selected by some predetermined standard, but not if that group is itself selected indiscriminately from the totality of the community. So, in the cases relied on by defendants, the selection of the group had been made on a basis which inherently limited its membership: *Elliott* v. *Behner* (1939) 150 Kan. 876 [96 P.2d 852, at pp. 883-

---

[5]Plaintiff's Requested Instruction No. 10.

[6]Although the policy involved in *American Motorists Ins. Co.* v. *Moses* (1952) 111 Cal.App.2d 344 [244 P.2d 760], included a comparable exclusionary clause, the court decided the case on another ground and expressly declined to construe the clause herein relied on. (See 111 Cal.App.2d at p. 350.)

In *Fireman's Fund Ins. Co.* v. *Chasson* (1962) 207 Cal.App.2d 801 [24 Cal.Rptr. 726], we had before us a case involving a similar policy and a similar transportation activity. The trial court determined that the transportation was within the ''public conveyance'' exclusion but that, since the insurance company's nonliability did not appear from the face of the personal injury complaints, it had been under a duty to defend those actions. Only the latter finding was raised on appeal and, necessarily, we did not consider or determine the correctness of the construction and application of the exclusionary clause.

[7]The cases are collected in an annotation in 30 American Law Reports 2d 274 and its supplements.

[8]See the cases discussed and analyzed in 30 American Law Reports 2d at pages 277-279.

884] (fellow employees); *Wood* v. *Merchants Ins. Co.* (1939) 291 Mich. 573 [289 N.W. 259] (fellow students); *Bertino* v. *Equitable Fire & Marine Ins. Co.* (1961) 214 N.Y.S.2d 155 (children enrolled in a particular summer camp); *Commercial Credit Corp.* v. *Monroe* (1954) 38 Tenn.App. 596, [277 S.W.2d 423] (members of a particular band).

▇ Tested by these standards, the instructions as given were correct. ▇ In fact, under the evidence, no verdict or finding other than the verdict and finding here entered could lawfully have been arrived at. This being so, there is likewise no merit in the claim of prejudice from the re-reading of the instructions.

▇ Appellants also contend that the court erred in not giving an instruction to the effect that exclusions are to be viewed most favorably to the insured and most strongly against the insurer, citing our decision in *Robinson* v. *North American Life & Casualty Co.* (1963) 215 Cal.App.2d 111 [30 Cal.Rptr. 57]. However, the *Robinson* case dealt with a true ambiguity in the policy provisions; it is inapplicable where, as here, the court has correctly construed the policy as a matter of law, leaving to the jury only the task of determining whether or not the facts fell within the policy as so construed.

The judgment is affirmed.

Burke, P. J., and Jefferson, J., concurred.