UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Appellant,

v.

AMERICAN INTERINSURANCE
EXCHANGE, Appellee.

Court of Appeals of Kentucky.

Oct. 24, 1986.

Gregory Y. Dunn, Hensley, Dunn & Ross, Horse Cave, for appellant.

Elizabeth Ullmer Mendel, Woodward, Hobson & Fulton, Louisville, for appellee.

Before CLAYTON, LESTER and MILLER, JJ.

CLAYTON, Judge.

This appeal arises from a declaratory judgment action between two insurers to determine which must provide automobile liability coverage to an insured sued as a result of an automobile accident involving a pedestrian. The circuit court below entered a judgment for the appellee, American Interinsurance Exchange (AIE), holding that the "public or livery conveyance exclusion" of its policy applied to exclude coverage to the insured, Verna Mouser. The appellant, United States Fidelity and Guaranty Company (USF & G), was determined by the same judgment to have primary and sole liability coverage and duty to defend. We disagree with this conclusion and accordingly reverse the judgment of the Nelson Circuit Court.

On Monday, January 3, 1983, Verna Mouser was returning several elderly women to their homes in Nelson County, Kentucky, after having taken them to apply for federal fuel bill assistance. While driving toward New Hope, Kentucky, Mouser stopped her car to drop off one of the passengers, Imelda Ratliff, at her home. In the process of turning the car around, Mouser allegedly backed into Ratliff causing her serious physical injury.

At the time of the accident, Mouser was driving her personal automobile, which was covered by a garage liability insurance policy issued by AIE to her husband, a used car dealer. Under the terms of that policy, no coverage applied while the automobile

was being used as a "public or livery conveyance." In addition to the policy issued by AIE, a separate automobile liability policy had been issued to Mouser's employer, the Community Action Agency (Agency). The Agency is a nonprofit social service agency funded by federal and state government. Included within its organization is the Aging Office directed by Lois Glasscock, Mouser's immediate supervisor. As Glasscock by deposition explains, the aging program extends services to senior citizens in the eight Lincoln Trail Counties, including home meal delivery, transportation, outreach, information, and referral services. As part of the transportation services, persons over sixty years of age or their spouses, could request transportation to nutrition centers, doctors, shopping, the social security office, the local Department for Human Relations office, and in some counties, the bank. Although no direct fee was demanded of passengers, a 25 cent donation was requested. No one was to be denied services, however, if they chose not to contribute and records showed that only approximately half of the passengers chose to do so. In the course of providing these services, the Agency had established certain driving routes on predetermined days, with exceptions being made in the case of emergency medical services. According to Glasscock, most of the senior citizen transportation provided was route transportation.

While the Agency did have approximately 17 of its own federally purchased vehicles to provide these aging services, employees such as Mouser, an outreach driver since 1982, did use their personal vehicles on certain days for which they were reimbursed 18.5 cents per mile. Ordinarily Mouser would drive her own car on Tuesdays and Wednesdays to deliver meals to the homebound and look in on elderly service recipients. Agency records kept during the month of January in 1983 reveal that Mouser was reimbursed $164.08 for having driven 886 miles in the course of delivering 102 meals and carrying 784 passengers. Although the federally-funded Agency vehicles (mostly passenger vans)

were required by federal regulation to transport the paying public at $1.50 a trip should any seats be empty, private vehicles such as Mouser's were not required to comply with this regulation. Mouser, in her deposition, denied ever having transported the general public, stating "I am not for hire, I am no taxi." That Monday, the day of Ratliff's injury, Mouser would not normally have been driving for the Agency except that application for federally-funded fuel assistance for the elderly was required to be made that day.

Based upon these facts, the Nelson Circuit Court determined that on January 3, 1983, Mouser was using her personal vehicle as a "substitute vehicle" for the vans owned by the Agency. Citing *Concord General Mutual Insurance Co. v. Home Indemnity Co.*, 368 A.2d 596, 597 (Maine 1977), the trial court found the Agency vans to be similar to the school buses discussed in *Concord* and thus a "livery conveyance."

For several reasons, we cannot accept *Concord* as being dispositive. In *Concord,* an employee of the public works department of Biddeford, Maine, was struck and killed by a school bus. The bus driver's private insurance company, Concord, brought an action under Maine's Uniform Declaratory Judgment Act to determine its duty to defend. By agreement, Concord and Home Indemnity, Biddeford's insurer, submitted the action to a referee. After a hearing, the referee found that the bus driver's private insuror had no duty to defend as the school bus involved was, at the time, a livery conveyance excluded from coverage under Concord's policy. No timely objections were filed to this finding. Accordingly, the report was accepted by the Superior Court and judgment was entered. On appeal to the Supreme Judicial Court of Maine, two issues were discussed: the fellow employee exclusion and the workmen's compensation exclusion.

Neither of these exclusions is relevant to the issue at hand. In this respect, the decision does nothing more than make general reference to the public conveyance and

livery exclusion in discussing the history of the case. No analysis of the exclusion is given. Moreover, *Concord* is factually distinguishable, as the bus driver involved was not driving her personal vehicle at the time of the accident. Nor is there any indication from the opinion that the driver ever drove her private vehicle in fulfilment of her duties as a bus driver. Thus, we place little weight upon *Concord,* factually or legally, in resolving the present question.

While no Kentucky judicial decisions have yet addressed the issue of defining a "public or livery conveyance" exclusion, a multitude of other jurisdictions have taken the opportunity to do so. *See generally* Annot., 30 ALR2d 273 (1952). From their efforts, we arrive at the following generally accepted definition,

> The term "public conveyance" means a vehicle used indiscriminately in conveying the public, and not limited to certain persons and particular occasions or governed by special terms. The words "public conveyance" imply the holding out of the vehicle to the general public for carrying passengers for hire. The words "livery conveyance" have about the same meaning.

*Lakeshore Dev. Corp. v. Gulf Ins. Co.,* 353 F.2d 163, 165 (5th Cir.1965); *Allstate Ins. Co. v. Roberson,* 217 F.2d 10, 13 (8th Cir. 1954); *Elliott v. Behner,* 150 Kan. 876, 96 P.2d 852, 857 (Kan.1940); *Stanley v. American Motorists Insurance Co.,* 195 Md. 107, 73 A2d (4), (Md.1950); *American Fidelity Fire Ins. Co. v. Pardo,* 299 N.Y. S.2d 521, 523 (N.Y.Sup.Ct.1969); *Smith v. Stonewall Casualty Co.,* 212 Va. 765, 188 S.E.2d 82, 83 (Vir.1972). Applying that definition to the facts of the present appeal reveals that Verna Mouser was not operating her personal vehicle as a public or livery conveyance at the time of the accident so as to exclude liability coverage by AIE.

Only those individuals or their spouses who were verifiably 60 years of age were entitled to the transportation services the Agency offered the elderly through Mouser. This qualifying group, in order to receive those transportation services, was additionally required to specifically make request for them. Furthermore, in receiving transportation, senior citizens requesting it were limited first, to the Agency's scheduled routes, and second, to the days upon which those routes were being driven. Only in case of emergency could a passenger demand immediate nonscheduled transportation to a medical facility. Otherwise, qualifying recipients of Agency services were limited to transportation to Agency-chosen destinations at times and routes chosen by the Agency for its convenience. Thus, it can hardly be said that Mouser indiscriminately held her automobile out to the public without special terms or limitations as to persons or occasions.

The use of federally-funded Agency vans, or the federal regulations relating to public seat purchasing on such vans, is immaterial. Private vehicles such as Mouser's were not required to recognize such restrictions, nor did Mouser ever convey anyone other than a service recipient or hold herself out as willing to do so. To the contrary, Mouser, as noted above, resoundingly denies such action, stating "I am not for hire. I am no taxi." Therefore, it cannot be held that Mouser's vehicle was merely a "substitute" for an Agency van. The only cited case law on point rejects this proposition. *St. Paul Mercury Indemnity v. Knoph,* 87 N.W.2d 636, 639 (Minn.1958).

Nor is Mouser's driving schedule or mileage on other scheduled Agency trips during the month of January, 1983, determinative in the present inquiry. The proper focus is January 3, 1983. Transportation services made prior to or following the date of the accident would, even if determined to be a public or livery conveyance, serve only to suspend the operation of AIE's garage liability policy for the duration of the specific trip involved. *See Wall v. Great American Indemnity Co.,* 46 So.2d 655, 658 (La.App.1950); *Fort Worth Lloyds Ins. Co. v. Lane,* 189 S.W.2d 78, 79 (Tex. Civ.App.1945).

Nor does the holding of *Allstate Ins. Co. v. Normandie Club*, 221 Cal.App.2d 103, 34 Cal.Rptr. 280 (Cal.App.1963), convince us to abandon our above-stated conclusions. In *Normandie Club*, an employee of the club who regularly drove patrons from their homes in Hollywood, California, to and from the club, was involved in an automobile accident while returning several patrons to their homes. As part of the ensuing litigation, Allstate, the employee's insurer, brought a declaratory judgment action based upon the public or livery conveyance exclusion in the automobile insurance policy involved. Both the trial court and the appellate court subsequently concluded that coverage was excluded under the policy's exception. In so concluding, the California District Court of Appeals opined that neither compensation, nor fixed routes or schedules was determinative. *Id.* at 282. The primary factor to be considered in the California court's view was whether the group of the public served was selected by some predetermined standard or if the group selected itself indiscriminately. *Id.* at 283. As any general member of the public seeking to become a club patron or having club membership could request transportation, the appellate court concluded that the policy exclusion applied.

In the present appeal, only those persons verifiably over sixty years of age seeking participation in transportation to Agency services or on Agency scheduled routes could qualify for transportation with Mouser. All others, regardless of their desire, could acquire transportation only on Agency *vans* and even then only where empty seats remained unfilled by service recipients. As Mouser was not required to, and had apparently elected not to, carry individuals other than qualifying service recipients in her own auto, we fail to see the applicability of *Normandie Club*. Mouser's private vehicle was simply not a van upon which the general public might ride. Moreover, those individuals which did qualify to ride with Mouser in her private automobile can be said to be self-determining only to the extent of expressing their desire for transportation. That transportation, its schedule, route, and destination were predetermined by the Agency as was the age group which qualified to ride. Thus, we decline to follow *Normandie Club*, described as "the high watermark for application of the exclusionary use provision" in *Lakeshore Dev. Corp. v. Gulf Ins. Co.*, 353 F.2d 163, 166 (1965). To do so in the present context would be contrary to the long-standing principle that such exclusions should be strictly construed to make insurance effective, *State Automobile Mut. Ins. Co. v. Trautwein*, Ky., 414 S.W.2d 587, 589 (1967), and would additionally run contrary to the great weight of the case deciding this issue.

The judgment of the Nelson Circuit Court is reversed.

All concur.