[Civ. No. 18515. First Dist., Div. Two. Jan. 14, 1960.]

CECILIA S. MIESEN, Plaintiff and Respondent, v. BILL
 BOLICH et al., Defendants and Respondents; PACIFIC
 EMPLOYERS INSURANCE COMPANY (a Corpora-
 tion), Appellant.

Barfield & Barfield for Appellant.

Julian D. Brewer, Fitz-Gerald Ames, Sr., George Olshausen, Ropers & Majeski and Currie, Lebsack & Hannig for Respondents.

KAUFMAN, P. J.—This is an appeal by defendant and cross-defendant, Pacific Employers Insurance Company (hereinafter referred to as Pacific Employers) from two judgments under section 630 of the Code of Civil Procedure: the first in favor of plaintiff and respondent, Cecilia S. Miesen, the assignee of a judgment creditor under section 11580 of the Insurance Code; the second in favor of cross-complainants and respondents, Bill Bolich and Chuck Lundegard, individually and doing business as B & C Texaco Service for attorneys' fees aggregating $1,700 and costs in this action.

On May 25, 1955, plaintiff, Cecilia Miesen, and her husband, Christopher, recovered a judgment against Bolich and Lundegard (S.F. No. 414,102) for $50,000 for personal injuries sustained by Christopher Miesen, in an accident arising out of a hazard created by Bolich and Lundegard by the negligent maintenance of the side racks of a truck owned by T. McDonald, doing business as West Coast Truck Rental Company. On the same day, Christopher Miesen assigned and transferred all of his rights in the judgment to his wife. One-half of the judgment was paid by the insurance carrier for McDonald and West Coast on June 27, 1955. Subsequently, on February 17, 1956, plaintiff, Cecilia Miesen, filed this action for the balance of the judgment against Bolich and Lundegard and Pacific Employers, who had issued a garage liability policy to Bolich and Lundegard.

It was stipulated that this policy was in full force and effect at the time of the accident on February 2, 1951. Bolich and Lundegard cross-complained and asked for a declaration of their rights and duties under the insurance policy. Pacific Employers, in its answer, claimed nonliability under the policy and moved to strike the cross-complaint as the action for declaratory relief was equitable in nature and should not be tried by a jury. At the trial before a jury, plaintiff argued that the policy was sufficiently ambiguous to admit extrinsic evidence. Pacific Employers took the position that the policy had a clear and definite meaning on its face and that extrinsic evidence was inadmissible.

At the conclusion of all the evidence, plaintiff's motion for a directed verdict against Bolich and Lundegard, individually and doing business as B & C Texaco Service, was granted. Plaintiff then moved for a directed verdict against Pacific Employers, which motion was denied. Then the court denied Pacific Employers' motion for a directed verdict against the plaintiff and the cross-complainants. The jury returned a

directed verdict in favor of the plaintiff against Bolich and Lundegard individually and doing business as B & C Texaco Service but could not agree on a verdict as to the liability of Pacific Employers, and was discharged. The jury did not consider the cross-complaint because the jurors felt that it was dependent on the outcome of the complaint on which they were deadlocked. The judgment on the directed verdict against Bolich and Lundegard was entered on May 28, and no appeal is taken from that judgment.

On June 2, 1958, plaintiff moved for a judgment against Pacific Employers under section 630 of the Code of Civil Procedure which orders judgment where a motion for a directed verdict should have been, but was not, granted. This motion was granted on the grounds that there was no evidence to support a verdict in favor of Pacific Employers and that the evidence as a matter of law required a directed verdict in favor of the plaintiff. In addition, the court granted the declaratory relief requested by the cross-complaint and decreed:

"Now, THEREFORE, it is hereby adjudged that garage liability policy No. 02-AC912 of PACIFIC EMPLOYERS INSURANCE COMPANY insured defendants and cross-complainants BOLICH and LUNDEGARD, individually and doing business as B & C TEXACO SERVICE against liability for the injury which occurred to plaintiff's assignor on February 2, 1951."

This appeal followed. It is argued that both of the judgments against Pacific Employers must be reversed because: (1) The garage liability policy in question does not apply to the judgment for personal injuries incurred by the plaintiff's assignor in the use of a truck rented to another; (2) A judgment entered under section 630 of the Code of Civil Procedure is erroneous if there is any substantial evidence in the record to defeat it; (3) The court committed prejudicial error in its rulings on the evidence and its instructions to the jury; (4) A motion for a directed verdict under section 630 of the Code of Civil Procedure cannot be made by a party other than the one who has made the prior motion for a directed verdict; (5) The judgment for attorneys' fees in favor of Bolich and Lundegard was improper, as they were not entitled to attorneys' fees in this action.

The facts relating to the accident in which plaintiff's assignor was injured are not in dispute. Bolich and Lundegard operate a service station and auto repair shop in Redwood City, California. They also kept on their premises several

pieces of rental equipment owned by Mr. McDonald, doing business as West Coast Truck Rental. Bolich and Lundegard orally undertook to maintain as well as to rent these trucks for West Coast in return for a monthly consideration. On February 2, 1951, Mr. Fetters, Mr. Miesen's son-in-law, rented a truck and signed the rental agreement which stated in part:

"It is further agreed that the said West Coast Truck Rental Co. does not guaranteed [sic] condition of said equipment, and in case of injury or accident resulting in said equipment being laid up for repairs for a longer period than one-half day, I agree to pay at the rate for which this equipment is rented, for time that is lost by reason of said equipment being laid up on account of said injury or accident."

While loading some furniture, Mr. Miesen was precipitated from the bed of the truck backwards to the pavement, because of defective side racks and stakes of the truck.

The garage liability policy issued by Pacific Employers to Bolich and Lundegard contained the following provisions, relevant to this controversy:

"INSURING AGREEMENTS

"I COVERAGE A—BODILY INJURY LIABILITY

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the *hazards hereinafter defined.*

"COVERAGE B—PROPERTY DAMAGE LIABILITY . . .

"DEFINITIONS OF HAZARDS

"Division 1—PREMISES-OPERATIONS-AUTOMOBILES

"The ownership, *maintenance or use of the premises for the purpose of an automobile dealer, repair shop,* service station, storage garage or public parking place, *and all operations necessary or incidental thereto; and the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes* and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in the above defined operations.

"Division 2 — PREMISES - OPERATIONS - AUTOMOBILES NOT OWNED OR HIRED

"The *ownership, maintenance or use of the premises for the purpose of an automobile repair shop,* service station, storage garage or public parking place, *and all operations necessary or*

*incidental thereto; and the use in connection with the above defined operations of any automobile not owned or hired by the named insured,* a partner therein or a member of the household of any such person.

"Division 3—ELEVATORS . . .

"COVERAGE C—AUTOMOBILE MEDICAL PAYMENTS . . .

"COVERAGE D—PROPERTY OF OTHERS IN CHARGE OF NAMED INSURED . . .

"II DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS . . .

"III DEFINITION OF INSURED . . .

"IV PREMISES, ELEVATOR, AUTOMOBILE DEFINED, TWO OR MORE AUTOMOBILES

"(a) PREMISES. The unqualified word 'premises' means premises operated by the *named insured for the purposes insured hereunder,* and includes the ways immediately adjoining.

"(b) . . .

"(c) AUTOMOBILE. The word 'automobile' means a land motor vehicle or trailer, other land equipment capable of moving under its own power, equipment for use therewith and animal drawn equipment. The word 'trailer' includes semi-trailer.

"EXCLUSIONS

"This Policy does not apply:

"(a) to liability assumed by the insured under any contract or agreement except a warranty of goods or products;

"(b) to any automobile *while rented to others by the named insured,* to any haulaway, tank truck, tank trailer, or tractor used therewith, owned, hired or held for sale by the named insured and not being used for demonstrating or testing, or to any watercraft, while away from the premises; or, except under division 3 of the Definition of Hazards, to any elevator at the premises; . . ." [Emphasis supplied.]

Two issues were presented by the pleadings here: first, whether the accident in which Mr. Miesen was injured is covered prima facie by the above policy provisions; second, whether the language "while rented to others" in the above quoted exclusion clause excludes the accident from the coverage of the policy. The trial court held as a matter of law that the hazard which caused the accident was not excluded from the policy.

On appeal, appellant contends only that the exclusion clause clearly applies to the risk of accident here involved. Appellant argues that since the accident admittedly occurred *while the*

*truck was rented to others* by the named insured, the trial court should have entered a directed verdict in its favor as the policy clearly does not cover the auto truck rental aspects of Bolich and Lundegard's operations. Plaintiff and cross-complainants argue that the truck was not rented by the named insured, but by West Coast; that the rental agreement clearly indicated that the responsibility for maintenance and repair of the trucks was not assumed by West Coast; that plaintiff's action was based on the failure to adequately maintain and repair the trucks, a hazard which is clearly covered by the policy; and that the exclusion clause dealt only with *hazards* which arise while the truck is rented out to someone else, while in the instant case, the hazard arose while the truck was still on the premises, and out of the garage-repair and maintenance aspects of Bolich and Lundegard's operations, rather than out of the truck rental aspect of their operations.

The policy issued to the cross-complainant was designed to cover the *"maintenance* or *use of the premises* for the *purposes of automobile dealer repair shop,* service station, storage garage or public parking place *and all operations necessary or incidental thereto;* and the ownership, maintenance of automobiles in connection with the above defined operations and the occasional use for other business operations."* [Emphasis supplied.] The premium for the policy was computed on the basis of the Bolich and Lundegard payroll, which payroll included the work of his employees in the repairing and maintaining of the trucks of West Coast Truck Rental Company. There was evidence that the side racks of the particular vehicle on which Mr. Miesen was injured had been repaired, several months before the accident.

The evidence presented indicated that the parties did not consider the particular hazard which caused the accident in which Mr. Miesen was injured. Defendant's agent testified that if Bolich and Lundegard had agreed to only maintain the equipment for West Coast, the accident would have been covered by the policy.

"The understanding of an ordinary person is the standard used in construing a contract of insurance, and any ambiguity in language must be resolved against the insurer. [Citation.] It is also the rule that exceptions and exclusions are construed strictly against the insurer and liberally in favor of the insured." (*Arenson* v. *National Automobile & Cas. Ins. Co.,* 45 Cal.2d 81 at 83 [286 P.2d 816] ; *Kershaw* v. *Maryland Casualty Co.,* 172 Cal.App.2d 248 [342 P.2d 72].) ▉ It

is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. If semantically possible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. (*Juzefski* v. *Western Cas. & Surety Co.*, 173 Cal.App.2d 118 [342 P.2d 928]; *Continental Cas. Co.* v. *Phoenix Const. Co.*, 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914].)

 We have not been able to find any California authorities interpreting a provision exactly like the one here involved. Defendant relies on *Rollo* v. *California State Automobile Assn.*, 159 Cal.App.2d 172 [323 P.2d 531], and *Treadwell* v. *Pacific Indemnity Co.*, 154 Cal.App.2d 853 [317 P.2d 123], and *Oakland Stadium* v. *Underwriters at Lloyd's*, 152 Cal.App.2d 292 [313 P.2d 603]. These authorities, however, only relate to general construction of exclusion clauses not like the ones involved in the instant case. For example, in the Rollo case, an employee injured in an auto accident as the result of a fellow employee's negligence, sued on an automobile liability policy to collect the amount of the final unsatisfied judgment against the fellow employee. The policy specifically excluded a fellow employee. In the Treadwell case, the tools of a plaintiff and his employees were stolen from within the plaintiff's building. The limits of liability set forth in the policy were "nil" for property in the building. The plaintiff argued on appeal that "nil" applied to the limits of liability rather than the coverage and this court held that such a construction would be strained and the policy had to be construed as a whole. In the Oakland Stadium case, *supra*, the question before the court was whether the policy covered an employee of the racing association who had requested a judgment against the plaintiff stadium for personal injuries received during an automobile race, charging plaintiff's negligent maintenance of the track in its stadium. The contract between the plaintiff and the racing association provided that the plaintiff would be responsible for the maintenance of the track and as a condition of permitting the race on its premises, the plaintiff was to be added as an additional assured on the policy theretofore issued by the defendant to the racing association. The policy expressly excluded the liability of the plaintiff as an owner, operator and maintainer of the race track and contained no expression of the character of the plaintiff's business. This court (Division One) held that the plaintiff therefore was ex-

cluded. Both sides cite *Guidici* v. *Pacific Automobile Ins. Co.*, 79 Cal.App.2d 128 [179 P.2d 337]. In that case, the plaintiff's assignor left a car with an automobile repair and storage garage. While the work was being done, the car was damaged. The policy specifically excluded property "in charge of the named insured" and this court held that the damage occurred within the terms of the exclusion clause.

There are, however, a few cases in other jurisdictions which throw some light on the problem here involved. In *Employers' Liability Assur. Corp.* v. *Youghiogheny & Ohio Coal Co.*, 214 F.2d 418, the plaintiff was injured while away from the premises of the insured when the door of a freight car loaded by the insured fell on him. The complaint charged the negligence of the insured coal company in the inspection and maintenance of the freight car. The policy contained a provision that it would not apply to hazards while the vehicle was away from the premises of the insured. The Eighth Circuit Court of Appeals held that the accident was not within the terms of the exclusion clause because the alleged negligence arose at the insured's premises.

In *Lieberman* v. *New Amsterdam Casualty Co.*, 284 App. Div. 1051 [135 N.Y.S.2d 850] (re-hearing and appeal denied 137 N.Y.S.2d 840), the insured, a gas station, brought an action for declaration of its rights under a policy insuring against negligence at its place of business. The gas station had replaced a hub cap for a customer. Subsequently, when the car was driven off the premises by the customer, the hub cap rolled off and injured a pedestrian. The court held that the accident was within the coverage of the premises even though the accident occurred away from the premises because the accident was caused by the hazard insured against, namely, the negligence of the gas station operator at his place of business. The reasoning of the Lieberman case was recently followed in *Empire Mutual Insurance Co.* v. *Bogart*, 13 Misc.2d 1094 [178 N.Y.S. 2d 509], in which the court construed a manufacturers' and contractors' liability policy.

The contrary view was taken in Ohio, in *Workman* v. *Republic Mut. Ins. Co.*, 144 Ohio St. 37 [56 N.E.2d 190]. The Supreme Court of Ohio held that a garage liability endorsement affixed to an automobile liability insurance policy which covered only injuries sustained on or about the premises described and caused by the operation necessary to the conduct of the named insured's business (which was dealing in automobiles and operating a repair garage) did not cover an

accident which occurred after the automobile had left the premises in control of the purchaser although the accident was caused by defective parts furnished for or inefficient workmanship upon the automobile by the insured.

In *O'Toole* v. *Empire Motors* (1935), 181 Wash. 130 [42 P.2d 10], the customer of a garage recovered a judgment against the garage for damages resulting from negligent repair of the automobile. The court held that the accident was not excluded by a clause in the policy which excluded liability under contract, although the repairs were made pursuant to an agreement. The court also pointed out that the insurance company was bound by the prior judgment which established the negligence of the garage.

In *Sadikoff* v. *American Indemnity Co.* (1951), 35 Tenn. App. 1 [242 S.W.2d 316] the insured operated both a parking lot and a service station. The policy covered accidents arising out of the operation of the gas station but excepted accidents arising out of the operation of the parking lot. A parking lot customer entered the gas station premises and fell into an unlighted grease pit. The court held that the accident was within the coverage of the policy and reasoned as follows at 317-318 [242 S.W.2d] :

"By cognate reasoning we think an accidental injury arises out of and in connection with a business only if there is apparent to the rational mind a causal connection between the injury and the maintenance of the premises for the purposes of the business or some act incident to the operation of the business. It would not be a question of what caused the injured person to come upon the premises but a question of whether the act or condition causing the injury arose out of the maintenance of the premises or the prosecution of the business.

"The cause of Mrs. Shoick's fall was the maintenance of an unguarded and unlighted grease pit in connection with the business activities covered by the policy. It was not maintained in connection with the excepted operation of the parking lot or on a part of the premises used for that purpose. It is true Mrs. Shoick would not have fallen into the pit if she had not parked in the parking lot. But the grease pit was not on the parking lot and, so far as appears, there was no occasion for a customer of the lot to go near the pit. The presence of Mrs. Shoick near the pit was the condition which made her fall possible—not the cause.

"The insuring clause and the exception should not be considered separately but as parts of a whole, construing any am-

biguities against the insurer to ascertain the intention of the parties as disclosed by the language used in the policy. *Collcy* v. *Pearl Assur. Co.*, 184 Tenn. 11 [195 S.W.2d 15].

"When so construed we think it is apparent that the intention of the parties was to afford protection to the insured where the injury arose out of or in connection with the business of operating a gasoline service station. The exception was designed to protect the Company from liability for injuries growing out of some act of the insured in connection with the excepted pursuits even though the act giving rise to suit may have occurred on the premises described in the policy."

Similarly in the instant case, we think it is apparent that the intention of the parties was to afford protection to the insured where the injury arose out of or in connection with the business of operating a service station and repair shop. The cause of Mr. Miesen's accident was the cross-complainants' faulty maintenance of the truck, not the fact that the truck was rented to a third person and away from the premises of the insured at the time of the accident. The question is: did the cause of the injury and the negligent maintenance of the truck arise out of and in connection with the insured pursuit? We agree with the trial court that this is clearly so stated in the terms of the policy.

 The next argument is that the judgment must be reversed because a judgment under section 630 of the Code of Civil Procedure is erroneous if there is any substantial evidence in the record to defeat it. The rule as to motions under section 630 is the same as that applicable to nonsuits and directed verdicts. (*Carpenter* v. *Atchison, T. & S.F. Ry. Co.*, 109 Cal.App.2d 18-23 [240 P.2d 5].) "The only question to be determined is whether there was in the record any evidence of negligence which should have been submitted to the jury." (*Thompson* v. *Atchison, T. & S.F. Ry. Co.*, 96 Cal.App.2d 974 [217 P.2d 45].) We do not think there was in the instant case any question of fact which should have been submitted to the jury. The construction of the insurance policy was simply a matter of law for the court.

Having concluded that there were here no questions of fact for a jury, we need not concern ourselves with defendant's arguments that the court committed prejudicial error in its ruling on the evidence and instructions to the jury.

██ The next argument is that a motion for a directed verdict under section 630 of the Code of Civil Procedure

cannot be made by a party other than one who had made a prior motion for a directed verdict. This unduly technical argument is based on the fact that the motion here was made by the plaintiff as the complaint was not officially amended to include the cross-complainants until a later stage in the proceedings. We have been unable to find any authority which holds that the motion must be made by the same party who made the previous motion for a directed verdict in a situation such as this one where one party stands in the shoes of the other.

On June 23, 1958, the cross-complainants mailed to the plaintiff and cross-defendant a notice of motion that:

"... day, or as soon thereafter as counsel can be heard, cross-complainants will bring this motion before the Court for the hearing of this motion, namely, that this Court order judgment to be entered in favor of the plaintiff in accordance with the motion for directed verdict heretofore made by plaintiff but denied by this Court on Monday, May 26, 1958, which motion should have been granted but was denied, and thereafter the jury deliberated but failed to render a verdict and was thereafter discharged without having rendered a verdict on Tuesday, May 27, 1958. Cross-complainants further move that this Court declare the rights and duties of cross-defendant under the policy of insurance referred to in the complaint and if the Court finds that the defendant insurance company breached its contract to defendants and cross-complainants BOLICH and LUNDEGARD, that this Court enter judgment against defendant PACIFIC EMPLOYERS INSURANCE COMPANY for reasonable attorneys' fees incurred in the defense of the prior action for personal injuries against defendants BOLICH and LUNDEGARD and for reasonable attorneys' fees for services rendered in the case at bar."

The resulting order was as follows:

"1) That the motion of the cross-complainants For Order That Judgment Be Entered In Accordance With Motion For Directed Verdict, on file herein, be, and the same is granted;"

Thus, the cross-complainants had merely joined in the motion made by plaintiff.

 The final contention on appeal is that the judgment for Bolich and Lundegard must be reversed because they were not entitled to attorneys' fees in this action. (No claim was made for attorneys' fees in the prior action.) Defendant relies on *Fazzino* v. *Insurance Co. of North America,* 152 Cal.App.2d 304 [313 P.2d 178], in which this court (Division One) held

that where the insurance policy was silent on the matter, the insured could not recover its attorneys' fees in a subsequent action for declaratory relief against the insurer. In the instant case, however, Bolich and Lundegard were involuntarily brought in as defendants by the assignee of the injured party. The court decreed that defendant had breached the express covenants of the insurance policy to defend Bolich and Lundegard. Thus, they are entitled to damages for the consequences which flow from the breach. (*Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654 [328 P.2d 198].)

In view of the foregoing, both judgments appealed from must be and are hereby affirmed.

Dooling, J., and Draper, J., concurred.

A petition for a rehearing was denied February 11, 1960, and appellant's petition for a hearing by the Supreme Court was denied March 9, 1960.