[Civ. No. 30505.    Second Dist., Div. Three.    Mar. 18, 1968.]

HAMES READY MIX, INC. et al., Plaintiffs and Respondents, v. TRANSIT CASUALTY COMPANY, INC., Defendant and Appellant.

Harry M. Hunt and Victor Rosenblatt for Defendant and Appellant.

Dryden, Harrington & Swartz and Vernon G. Foster for Plaintiffs and Respondents.

SHINN. J.*—Defendant appeals from a judgment imposing liability under an automobile insurance policy issued to plaintiffs by defendant and awarding plaintiffs damages. The court found that a 1960 Kenworth tractor acquired by plaintiffs and damaged in an accident was a replacement for a 1955 Kenworth tractor described in the policy and was therefore covered by the policy. The sole issue on appeal is the sufficiency of the evidence to support this finding.

The policy in question extended coverage to "newly acquired automobiles," defined as follows: " (2) Newly Acquired Automobile—an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household:

" (a) if it replaces an automobile described in this supplement, or if it is an additional automobile and if the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and

" (b) if the named insured or such spouse notifies the company within thirty days following such delivery ; . . . "

This is a typical "automatic insurance" clause, which is the subject of an annotation in 34 A.L.R.2d 936, and which has been the subject of extensive interpretation by the courts. In *Birch* v. *Harbor Ins. Co.*, 126 Cal.App.2d 714 [272 P.2d 784], it was held that the clause is to be construed in the alternative, as providing coverage either if the newly acquired automobile is a replacement, or if on the date of its delivery the company insures all automobiles then owned by the insured. The general rule with regard to replacement

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

coverage is that a newly acquired automobile will be covered if the allegedly replaced automobile is either disposed of by the named insured, or is *inoperable or incapable of further service*. (*Merchants Mut. Cas. Co.* v. *Lambert*, 90 N.H. 507 [11 A.2d 361, 127 A.L.R. 483]; *Mitcham* v. *Travelers Indem. Co.* (4th Cir. 1942) 127 F.2d 27; *National Indem. Co.* v. *Aanenson* (D. Minn. 1967) 264 F.Supp. 408; 7 Am.Jur.2d, Automobile Insurance, § 101.)

Appellant does not question that this is the rule. In *State Farm Mut. Auto. Ins. Co.* v. *Shaffer*, 250 N.C. 45 [108 S.E.2d 49], cited by appellant, it was stated as follows: "It is our opinion that the replacement vehicle is one the ownership of which has been acquired after the issuance of the policy and during the policy period, and it must replace the car described in the policy, which must be disposed of or incapable of further service at the time of the replacement."

The facts are these:

Hames Ready Mix, Inc. was a ready-mixed concrete business begun in 1956 by plaintiff Harry Leon Hames. The business required the use of several types of trucks and trailers for hauling ingredients to the plant and transporting concrete to the customer. Mr. Hames began with one piece of equipment in 1956; by 1962 he had accumulated 11 pieces of equipment. He customarily purchased used vehicles, and was frequently required to dispose of worn equipment and replace it with newer used equipment.

A "cement train," which is used to haul bulk cement to the plant, is made up of a tractor, an enclosed semi-trailer and an enclosed pull trailer. This particular type of tractor could be used only as part of a cement train, and not with any other equipment owned by plaintiffs. In January 1963, Hames owned one cement train. In March of 1963, Hames acquired a second cement train, consisting of a 1955 Kenworth tractor and two Cook Bros. trailers. One June 1, 1963, Hames received a "smoke ticket," a citation for excessive emission of smoke from the 1955 Kenworth tractor. He consulted Richard George, a mechanic and salesman of trucking equipment. After examining the tractor, George gave Hames an estimate of $2,800 to $3,400 to repair the engine, not including extensive repairs to the transmission. George testified that the engine, although it could be started up, was definitely not in good operating condition. Hames decided that it would be more profitable to buy a newer tractor than to repair the 1955 Ken-

worth; he then purchased a 1960 Kenworth from a private party which was delivered to him on July 1, 1963.

The 1960 Kenworth required modification before it could be used by Hames; while it was being modified, Hames attempted to use the 1955 Kenworth again. He had been warned by the officers at the time of the first "smoke ticket" not to come back again, so he decided to run in a different direction to a second cement source. He received another smoke ticket on this trip about July 1st, and on the following day he put the 1955 Kenworth in his yard and never used it again in any phase of his hauling operations. It remained in his yard for about two weeks, when it was removed to Richard George's yard. It remained there for several months, and was finally dismantled to obtain useful parts.

The 1960 Kenworth was readied for use on July 9, 1963, and the two trailers that had been attached to the 1955 Kenworth were attached to it. On July 10, 1963, ·the 1960 Kenworth cement train was put into service for the first time; on the return trip the following day, it was involved in an accident and damaged.

■ Liability for the damage to the tractor is the subject of the controversy. Respondents say the 1960 Kenworth was a replacement for the 1955 Kenworth, and thereby covered by the policy; appellant says that, as a matter of law, it cannot be a replacement vehicle because the 1955 Kenworth remained in the possession of plaintiffs, and there was evidence that it was still in a usable condition. The question for determination in cases such as this is whether the second vehicle *in fact* has replaced the first; this requires a determination in this case whether the 1955 Kenworth was in fact "capable of further service."

The trial court found that "[p]rior to July 9, 1963, the 1955 Kenworth Tractor was withdrawn by Plaintiffs from service because of mechanical difficulties.

"On or about July 1, 1963, plaintiffs had delivered to them a 1960 Kenworth Tractor, Engine No. DRF 63982.

"Said 1960 Kenworth Tractor was acquired by Plaintiffs as a replacement vehicle for the 1955 Kenworth Tractor, and said 1960 Kenworth Tractor, prior to July 11, 1963, did replace the 1955 Kenworth Tractor in plaintiffs' operations."

These findings imply that the court found, as embraced therein, that the 1955 tractor was incapable of further service

or use in plaintiffs' business. Appellant says plaintiffs had an attorney who advised them in insurance matters; the attorney did not notify defendant that the new tractor had been acquired, which "would seem to indicate that the plaintiffs themselves did not feel that the 1960 Kenworth vehicle was a replacement vehicle but rather was an additional vehicle, insurance for which would be obtained from the lowest bidder." We do not believe that this or any other circumstances indicated that plaintiffs did not intend and believe that the new tractor was a replacement of the old one.

The evidence was that the condition of the old tractor was such that it could not be lawfully used upon the highway; practically, it was unfit for use in plaintiffs' business as a part of a cement train. The fact that it was used upon occasion when the use was unlawful was not in conflict with the court's finding that it had been withdrawn from plaintiffs' service because of mechanical difficulties. Mr. Hames testified that the new tractor was acquired with the intention that it was a replacement for the old one, and not an additional vehicle. We believe that evidence of such intention, without evidence indicating a contrary purpose, justified the finding that the 1960 tractor was a replacement.

Whether a motor vehicle has become inoperable is a question of fact to be determined from a great variety of conditions that may afflict ailing and decrepit motor vehicles. The court was not considering a tractor with defects that could be easily and economically corrected, but one that could not be lawfully used in the business of the owners without expensive repairs that would cost more than the owners thought they would be worth. The decision of plaintiffs to remove the tractor permanently from their service under the described curcumstances justified the court in concluding it was inoperable under the rule.

The cases of *Mitcham* v. *Travelers Indem. Co.*, *supra* (4th Cir. 1942) 127 F.2d 27 and *Quaderer* v. *Integrity Mut. Ins. Co.*, 263 Minn. 383 [116 N.W.2d 605], present the question of the replacement of vehicles under policies similar to defendant's policy. Judgments denying liability of the companies under replacement provisions were affirmed on appeal but the facts of the cases differed from those of the instant case in material respects. We could not overturn the findings in our case unless convinced they were unsupported by reasonable inferences from the evidence. We are not convinced.

In *Hoffman* v. *Illinois Nat. Cas. Co.* (7th Cir. 1947) 159 F.2d 564, plaintiff was in the business of hauling livestock. A tractor insured by defendant was involved in an accident and, while it was not completely wrecked, was not thereafter used by plaintiff in his business. Plaintiff acquired a second tractor which was involved in an accident two weeks after the first. In affirming the trial court's determination that the second vehicle was a replacement for the first, the court pointed out that the first tractor was used in plaintiff's business, that after the accident it was not so used again and that the second tractor was acquired and used in its place. These facts were persuasive to the court in determining that plaintiff had intended that the second tractor replace the first, although he had not notified the insurance company of the replacement before the second accident, and even though the first tractor had been kept by plaintiff and theoretically could have been repaired.

We think the reasoning of this case is particularly appropriate in the resolution of the question presented in the case at bench. In view of the evidence that the 1955 Kenworth tractor could only be used as part of a cement train, that it had become unfit for this use and was therefore incapable of further service in plaintiffs' business, and that it was necessary that the 1960 Kenworth be acquired to do the work the 1955 vehicle had been doing, the court was justified in concluding that the 1960 Kenworth was in fact a replacement for the 1955 and was covered by defendant's policy.

The judgment is affirmed.

Ford, P. J., and Cobey, J., concurred.