[Civ. No. 9055. Fourth Dist., Div. Two. Apr. 2, 1970.]

CORRINNE PATTERSON, Cross-complainant and Respondent, v. INSURANCE COMPANY OF NORTH AMERICA, Cross-defendant and Appellant.

312

**COUNSEL**

King & Mussell and C. L. Vineyard for Cross-defendant and Appellant.

Richard M. Anderson for Cross-complainant and Respondent.

**OPINION**

**TAMURA, J.**—Cross-complainant (Mrs. Patterson) was involved in an automobile collision. The passenger and driver of the other vehicle filed separate actions against her for damages for personal injuries sustained in the accident. Mrs. Patterson thereupon tendered defense of the actions to the Insurance Company of North America (appellant) and upon its refusal to accept, filed a "Cross Complaint for Indemnity" against appellant to determine coverage under a liability insurance policy issued to Mr. Patterson and for attorneys' fees and expenses incurred in defending the two personal injury actions. The cases were consolidated, but by stipulation of the parties the cross-complaint was severed and tried prior to the two principal actions. The crucial issue in the trial on the cross-complaint was whether a 1950 Cadillac which Mrs. Patterson was driving at the time of the accident was automatically covered by appellant's policy under a replacement coverage clause. That issue was submitted to a jury on the following evidence:

In April 1961 Mr. Patterson, husband of Mrs. Patterson, bought an automobile liability policy from appellant covering a 1947 Cadillac and a 1950 Buick. In late April or early May of that year he bought the 1950 Cadillac in question. The accident occurred on December 7, 1961.

Mr. Patterson testified that he bought the 1950 Cadillac to replace the 1950 Buick, that he never operated the Buick after acquiring the Cadillac, that he stripped the Buick and after keeping it for "several weeks or a month or two" sold it for junk.[1]

Appellant introduced a certified copy of a motor vehicle registration certificate showing the vehicle registered to Mr. Patterson in 1963.

The liability policy provided "Coverage A—Bodily Injury Liability" and "Coverage B—Property Damage Liability" and contained the following pertinent provisions: "An automobile, ownership of which is acquired by the named insured or his spouse, if a resident of the same household, if it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and the named insured or such spouse notifies the company within thirty days following such date of delivery; *but such notice is not required under coverages A and B* and Division 1 of Coverage C *if the newly acquired automobile replaces an owned automobile covered by this policy.*" (Italics supplied.)

On the foregoing evidence a special verdict was submitted to the jury on the following question: "Did the 1950 Cadillac purchased by Earl J. Patterson, in April or May 1961, replace the 1950 Buick owned by him at that time?" The verdict was "yes."

Following the verdict, the court entered an "interlocutory judgment" decreeing that Mrs. Patterson was covered under the liability policy, should be reimbursed for attorneys' fees, costs and expenses in defending the principal actions, and was entitled to indemnification in accordance with the terms of the policy for any damages which may be awarded in those actions. The court retained jurisdiction to award Mrs. Patterson such additional attorneys' fees and expenses which she may incur in the defense of the principal actions as well as in the prosecution of the cross-complaint.

Following entry of the "interlocutory judgment," stipulated judgments

---

[1]Mr. Patterson testified in part as follows:

"Q. Did you do anything about it at all, touch it in any way?

"A. Took out the battery and salvaged that, and probably the Buick and the Cadillac had the same tires, changed tires, you know, I stripped it down. You see, it was no good. I wasn't driving it. I stripped it down, I will say. I stripped it down. From time to time I would take something off from it."

were entered in the two principal actions awarding plaintiffs therein damages with a stay of execution until the judgment on the cross-complaint became final.

Thereafter trial on the cross-complaint was reopened for the purpose of taking evidence on the amounts of any additional attorneys' fees, costs and expenses incurred by Mrs. Patterson. The court made findings of fact and conclusions of law and entered judgment in favor of Mrs. Patterson indemnifying her for the judgments entered in the principal actions and awarding her attorneys' fees totalling $1,864.40. Of the latter sum, $1,314.40 represented attorneys' fees incurred in the prosecution of the cross-complaint. Appellant appeals from the judgment on the cross-complaint.

Appellant contends: (1) The court erred in submitting the special verdict to the jury; (2) the uncontradicted evidence established, as a matter of law, that the 1950 Cadillac did not "replace" the 1950 Buick within the meaning of the liability policy; and (3) the court erred in awarding attorneys' fees incurred in prosecuting the cross-complaint.

## I

The thrust of appellant's contention respecting the propriety of submitting the special verdict to the jury is that the cross-complaint was an action for declaratory relief and as such, was an equitable proceeding in which a jury trial is discretionary and extends only to factual issues. On that premise appellant contends that the issue of replacement should not have been submitted to the jury.

Insofar as the right to a jury trial is concerned, it is erroneous to say that all declaratory relief actions are equitable; an action for declaratory relief has been characterized as *"sui generis."* (*Veale* v. *Piercy,* 206 Cal.App.2d 557, 560-561 [24 Cal.Rptr. 91].) Where an action for declaratory relief is in effect used as a substitute for an action at law for breach of contract, a party is entitled to a jury trial as a matter of right. (*State Farm etc. Ins. Co.* v. *Superior Court,* 47 Cal.2d 428, 431-432 [304 P.2d 13]; *Allstate Ins. Co.* v. *Normandie Club,* 221 Cal.App.2d 103, 105-106 [34 Cal.Rptr. 280].) " '[C]ourts will not permit the declaratory action to be used as a device to circumvent the right to a jury trial in cases where such right would be guaranteed if the proceeding were coercive rather than declaratory in nature.' " (*State Farm etc. Ins. Co.* v. *Superior Court, supra,* p. 432; Witkin, Cal. Procedure (1967 Supp.) p. 678; Comment (1959) 6 U.C.L.A. L.Rev. 678, 688.) In both *State Farm etc. Ins. Co., supra,* and *Allstate, supra,* an insurance company brought an action for declaratory relief to determine coverage under a liability policy and its obligation to defend a personal injury action brought against the

insured. In each case the court held that a jury trial was a matter of right.[2]

The instant case is indistinguishable. The cross-complaint for indemnity was instituted because appellant refused to provide defense for the personal injury actions as required by the policy, asserting a legal, rather than an equitable defense for its noncompliance. A jury trial was thus a matter of right.

## II

Appellant urged in the court below and now contends that the fact that the insured retained ownership of the replaced vehicle for some period of time as a matter of law precluded automatic coverage of the newly acquired vehicle. Appellant, therefore, contends there were no factual issues to submit to the jury and that judgment should have been entered in its favor. The validity of this contention turns on the meaning of the word "replace" as used in the policy.

Although extrinsic evidence is admissible in interpreting an ambiguous provision of an insurance policy (see *Delta Dynamics, Inc.* v. *Arioto,* 69 Cal.2d 525, 528 [72 Cal.Rptr. 785, 446 P.2d 785]; *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33, 37-40 [69 Cal.Rptr. 561, 444 P.2d 641]), no extrinsic evidence on the meaning of the word "replace" was introduced in the instant case. In these circumstances the proper interpretation of the word presents a question of law which a reviewing court must determine independently of any construction placed upon it by the trial court. (*United States Leasing Corp.* v. *Dupont,* 69 Cal.2d 275, 290 [70 Cal.Rptr. 393, 444 P.2d 65]; *Parsons* v. *Bristol Dev. Co.,* 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].)

Under an automatic replacement coverage clause such as the one involved in the present case, retention of possession or ownership of the replaced vehicle does not, in and of itself, preclude coverage of the newly acquired vehicle. Coverage is extended automatically "if the allegedly replaced automobile is either disposed of by the named insured, or is *inoperable or incapable of further service.*" (*Hames Ready Mix, Inc.* v. *Transit Cas. Co.,* 260 Cal.App.2d 173, 175 [66 Cal.Rptr. 898]; *Merchants Mut. Cas. Co.* v. *Lambert,* 90 N.H. 507 [11 A.2d 361; 127 A.L.R. 483]; *Hoffman* v. *Illinois Nat. Cas. Co.* (7th Cir. 1947) 159 F.2d 564, 566; *Mitcham* v. *Travelers Indem. Co.* (4th Cir. 1942) 127 F.2d 27; *National Indem. Co.* v. *Giampapa,* 65 Wn.2d 627 [399 P.2d 81, 83].) The concept of operability is one of practical, rather than legal, usability. (12

---

[2]In *Allstate Ins. Co.* v. *Normandie Club,* 221 Cal.App.2d 103 [34 Cal.Rptr. 280], the trial court, as in the instant case, made findings of fact adopting a jury verdict on the question of coverage.

Couch, Insurance (2d ed.) 256; *Hames Ready Mix, Inc.* v. *Transit Cas. Co., supra,* 260 Cal.App.2d 173, 177.) ■ Any doubt concerning the meaning of a provision of an insurance policy must be resolved in favor of the insured. (*Gray* v. *Zurich Ins. Co.,* 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168]; *Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.3d 914]; *Hoffman* v. *Illinois Nat. Cas. Co.* (7th Cir. 1947) *supra,* 159 F.2d 564, 565.) ■ If automatic coverage of a newly acquired vehicle was intended to be conditioned upon contemporaneous disposition of the replaced vehicle, the policy should have so provided. (*Merchants Mut. Cas. Co.* v. *Lambert, supra,* 90 N.H. 507 [11 A.2d 361, 362-363, 127 A.L.R. 483].)

■ In the present case there was substantial evidence that the Buick was replaced by the 1950 Cadillac within the meaning of the policy. The insured testified that he bought the Cadillac to replace the Buick, that the Buick was "no good," that he never used it after buying the Cadillac, that he stripped parts from it and eventually sold it for junk. The fact that the replaced vehicle continued to be registered in the insured's name for some period of time after acquisition of the Cadillac did not preclude coverage. (*Dean* v. *Niagara Fire Ins. Co.,* 24 Cal.App.2d Supp. 762, 766 [68 P.2d 1021].) ■ As the court aptly observed in *Hames Ready Mix, Inc.* v. *Transit Cas. Co., supra,* 260 Cal.App.2d 173, 177: "Whether a motor vehicle has become inoperable is a question of fact to be determined from a great variety of conditions that may afflict ailing and decrepit motor vehicles." ■ The issue of replacement in the instant case raised factual issues and was properly submitted to the jury.[3] ■ There being substantial evidence to support the jury verdict, we are not at liberty to disturb it on appeal.

### III

■ Appellant's contention that the court erred in awarding attorneys' fees for the prosecution of the cross-complaint is valid.

It is now settled that an insured is not entitled to an award of attorneys' fees incurred in prosecuting a separate action against an insurer to enforce a right to be defended or indemnified or to be reimbursed for attorneys'

---

[3]While the instructions to the jury could have been more specific as to what constitutes replacement, appellant raises no issue respecting its adequacy. At appellant's request the court instructed the jury: "As used in the special verdict the word 'replace' means to substitute something in the place of, to fill the place of, to supersede, or be substituted for." Appellant having failed to offer more specific instructions setting out the various factors to be considered in determining whether there had been a replacement, it may not now complain of the inadequacy of the given instruction. (*Nevis* v. *Pacific Gas & Elec. Co.,* 43 Cal.2d 626, 630 [275 P.2d 761]; *State Rubbish etc. Assn.* v. *Siliznoff,* 38 Cal.2d 330, 340 [240 P.2d 282].)

fees previously incurred in an action which should have been defended by the insurer. (*Lowell* v. *Maryland Cas. Co.,* 65 Cal.2d 298, 302 [54 Cal. Rptr. 116, 419 P.2d 180]; *Carroll* v. *Hanover Ins. Co.,* 266 Cal.App.2d 47, 50 [71 Cal.Rptr. 868].) *Miesen* v. *Bolich,* 177 Cal.App.2d 145 [1 Cal. Rptr. 912], upon which respondent relies, was distinguished by the Supreme Court in *Lowell, supra,* where it said of *Miesen*: "The plaintiff in that case, in order to collect the balance of a judgment for negligence in his favor, filed suit against both the insured and the insurer. The insured cross-complained for a declaration of his rights against the insurer. The court found the insurer obligated to defend the *Miesen* action against the insured and awarded the insured his attorney's fees incurred in *that* action."

It is ordered that the judgment be modified by reducing the award of attorneys' fees by $1,314.40. As so modified, the judgment is affirmed.

Kerrigan, Acting P. J., and Kaufman, J., concurred.