**DOMINIUM MANAGEMENT SERVICES, INC.,**
Plaintiff,

v.

**NATIONWIDE HOUSING GROUP, Nationwide Development Group, LP and Pinnacle Realty Management Company,**
Defendants.

**No. CIV. 4–96–849 (DSD/FLN).**

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 25, 1997.

Joseph W. Anthony, Fruth & Anthony, Minneapolis, MN, for Dominium Management Services, Inc.

Robert Michael Smith, Smith Law Office, Minneapolis, MN, Paul M. Floyd, Rau & Floyd, Minneapolis, MN, James David Oswalt, Craig N. Hentschel, Arnold & Porter, Los Angeles, CA, for Nationwide Housing Group.

Joseph W. Hammell, Craig D. Diviney, Lucy A. Dalglish, Dorsey & Whitney, Minneapolis, MN, Alan J. Gordee, Stephen R. Thames, Allen, Matkins, Leck, Gamble & Mallory, Irvine, CA, for Pinnacle Group Realty Management Co.

## ORDER

DOTY, District Judge.

This matter is before the court on plaintiff's motion for summary judgment. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court denies plaintiff's motion.

## BACKGROUND

Nationwide Housing Group ("NHG"), based in Santa Monica, California, is a real estate syndication company whose primary business has been the formation and syndication of interests in limited partnerships that develop, acquire, and operate low income housing. NHG is the general partner of Nationwide Development Group ("NDG"), a California limited partnership which is the general partner of NHG's operating limited partnerships. In 1994, NDG created two funds, the "Institutional Fund" and the "Opportunity Fund," to raise and invest capital, as limited partners, in the operating limited partnerships formed by NHG. By 1996, NHG had formed and syndicated thirty-nine operating limited partnerships. The Institutional Fund was the majority investor in, and had voting control over, thirteen of these operating limited partnerships. These thirteen partnerships owned over half of the total properties developed by the NHG operating limited partnerships. Nationwide Management Group, a separate corporation, was to act as property manager for the properties

owned by the limited partnerships pursuant to a separate management contract. Neither the Institutional Fund nor the Opportunity Fund was the majority investor in any of the remaining non-Institutional limited partnerships.

In early 1996, NHG began to explore whether any property management companies would be interested in a long-term contract to manage the properties owned by the operating limited partnerships. In April 1996, NHG entered into negotiations with Dominium Management Services, Inc. ("Dominium"), reaching an agreement effective May 1, 1996. Under the agreement, Dominium replaced Nationwide Management Group as property manager for one-year. Dominium executed two promissory notes loaning NHG a total of $150,000 and, as security for the loans, NHG gave Dominium a security interest in NHG stock and partnership interests in the NDG and NHG limited partnerships. Repayment on the notes was originally due August 15, 1996, but the parties agreed to continue repayment until August 22, 1996.

In July 1996, NHG began negotiations with Pinnacle Realty Management Company ("Pinnacle"), a commercial and residential real estate management company. Pinnacle presented a proposal to NHG regarding long-term property management contracts. In light of the differing partnership interests, Pinnacle was allegedly asked to negotiate separately with representatives of the Institutional Fund partnerships and the non-Institutional Fund partnerships. On August 8, 1996, Pinnacle submitted separate proposals to the Funds. On August 15, 1996, Pinnacle forwarded a "Letter of Agreement." On August 16, 1996, Pinnacle sent a "Revised Letter of Agreement" ("the Agreement") to NHG.

The Agreement provided, in relevant part, that NHG would not negotiate with any other party, including Dominium, and that the parties would "negotiate a complete agreement in good faith with the intent that the First Closing [would] take place by August 20, 1996." The agreement also contained four "funding" clauses. The "First Funding" clause stated that "on or about August 20,

1996," Pinnacle would loan $150,000 to NHG for the purpose of paying the Dominium loan in full. The "Fourth Funding" clause provided that when "the limited partners ... have approved the appointment of Pinnacle as the Managing General Partner," Pinnacle would make a fourth payment to NHG. The vote for approval was to be held within ninety days of the agreement and NHG was to notify the limited partners regarding the approval of Pinnacle as the managing general partner. The Revised Letter of Agreement was signed by all parties.

In dispute is whether, by August 20, 1996, Pinnacle and NHG had reached a complete agreement. Though the formal documentation contemplated by the Revised Letter of Agreement had been sent, via facsimile, to NHG, Pinnacle had not yet transferred funds to NHG to repay Dominium. On August 21, 1996, Pinnacle sent a letter by facsimile to NHG requesting that NHG return the letter with the appropriate signatures. The letter provided the following:

> We hereby confirm that the Revised Letter of Agreement dated August 16, 1996[,] is still valid as originally signed, except as modified as follows:
>
> 1. The First Funding may occur on August 22 instead of August 20.
>
> 2. The Second Funding may be delayed until the final overall agreement is signed.
>
> 3. The Exclusivity clause will be extended until August 30 during which time both parties will continue to negotiate in good faith to complete the documentation in the form and content envisioned by the Revised Letter of Agreement.

The document included signature lines for NHG's representatives but the document was never signed.

On August 22, 1996, Pinnacle wired funds to NHG to repay Dominium's loans. That same day, NHG notified Pinnacle by telephone that NHG would no longer continue the negotiations. By follow-up letter dated August 23, 1996, NHG informed Pinnacle that "[d]ue to the fact that Pinnacle was unable to perform under the revised letter

agreement dated August 16, 1996[,] between Pinnacle and Nationwide Housing Group, [NHG] elected to pursue other alternatives." The wired funds were returned to Pinnacle. On August 23, 1996, NHG and Dominium entered into an agreement for the purchase of the NHG limited partnerships.

On August 27, 1996, Dominium filed this action requesting declaratory relief that Dominium has an enforceable contract with NHG to acquire its interests and become managing general partner. On August 29, 1996, Pinnacle filed suit in a California state court, moving the court for a temporary restraining order and preliminary injunction to enjoin NHG from transferring, selling, or disposing of their interests in the limited partnerships, and to enjoin NHG from disposing of its corporate rights, stock, or assets. The California court denied the temporary restraining order and, after expedited discovery, denied the preliminary injunction.

On October 10, 1996, defendant Pinnacle filed counterclaims for declaratory judgment and intentional interference with contract, and cross claims against defendant NHG [1] for injunctive relief, breach of contract, breach of implied covenant of good faith and fair dealing, and promissory estoppel. On the same day, Pinnacle moved this court for a temporary restraining order and preliminary injunction. That motion was denied on November 5, 1996. In June 1997, NHG's motions to dismiss Pinnacle's cross claims were denied. On October 14, 1997, plaintiff moved for summary judgment.[2]

## DISCUSSION

■ The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248, 106 S.Ct. at 2509. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252, 106 S.Ct. at 2511. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510.

■ On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. at 2510. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue that facts supporting its claim will be developed later or at trial. Rather, the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2510–11. However, if a plaintiff fails to support an essential element of a claim, then summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

■ Dominium and Pinnacle seek declaratory relief. Under California law,[3] actions for declaratory relief, including questions relating to contract formation, validity, construction, nonperformance, and termination, are traditionally equitable proceed-

---

**1.** For purposes of this order, defendants NHG and NDG will be referred to as "NHG."

**2.** Defendant NHG joins in Plaintiff's motion for summary judgment.

**3.** The parties agree that California law governs this motion.

ings. *See Fowler v. Ross,* 142 Cal.App.3d ——, 191 Cal.Rptr. 183, 187 (1983); *Foster v. Masters Pontiac Co.,* 158 Cal.App.2d 481, 322 P.2d 592, 594 (1958); 15 Cal. Jur.2d 225, § 71. However, where an action for declaratory relief is, in effect, used as a substitute for an action at law, the issue may be appropriate for a jury's determination. *See Patterson v. Insurance Co. of North Am.,* 6 Cal.App.3d 310, 85 Cal.Rptr. 665, 667 (1970) (finding issue to be one of breach of contract, despite declaratory relief label, therefore submitting issue to jury). *See also Manneck v. Lawyers Title Ins. Corp.,* 28 Cal.App.4th 1294, 33 Cal.Rptr.2d 771, 774–75 (1994), *rev. denied* (Nov. 23, 1994).

■ At issue in this case is whether the two-page "Revised Letter of Agreement" dated August 16, 1996, constitutes a binding, enforceable contract. Plaintiff contends that the Agreement was simply an agreement to try to negotiate a binding contract, whereas defendant Pinnacle asserts that the Agreement was an enforceable contract. In essence, this is a question of breach of contract and, under California law, is a question proper for a jury determination. *See Ceriale v. Superior Court,* 48 Cal.App.4th 1629, 56 Cal. Rptr.2d 353, 357 (1996) (granting jury trial on breach of contract cause of action), *rev. denied* (Dec. 11, 1996); *Ersa Grae Corp. v. Fluor Corp.,* 1 Cal.App.4th 613, 2 Cal.Rptr.2d 288, 297 (1991) (affirming jury's finding that parties had enforceable contract). Because a review of the file, record, and proceedings establishes that there is a genuine issue of material fact as to whether a contract exists, summary judgment is inappropriate. Because the remaining claims turn on the determination of whether a binding contract existed between Pinnacle and NHG, summary judgment is not appropriate.

### CONCLUSION

Based on a review of the file, record and proceedings herein, the court concludes that summary judgment is not warranted in this case. Therefore, **IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment is denied.